# IN THE UNITED STATES DISTRICT COURT EASTERN DISTRICT OF WISCONSIN

JIMMY HARRIS,

        Plaintiff,

    v.

CITY OF MILWAUKEE,
OFFICER FROILAN SANTIAGO
OFFICER MARK KAPUSTA,
OFFICER STEVEN STELTER
CHIEF OF POLICE EDWARD FLYNN,
SERGEANT WALTER MCCULOUGH,

        Defendants

**Case No. 14-CV-1002**
**Jury Trial Demanded**

---

## AMENDED COMPLAINT

---

Plaintiff Jimmy Harris files this Amended Complaint against The City of Milwaukee, Officer Froilan Santiago, Officer Mark Kapusta, Officer Steven Stelter, Chief of Police Edward Flynn and Sergeant Walter McCulough (collectively, "Defendants") and alleges the following:

### INTRODUCTION

1. This is an action for money damages, declaratory, and injunctive relief brought pursuant to 42 U.S.C. §§ 1983 and 1988, the Fourth and Fourteenth Amendments to the United States Constitution, and under the law of the State of Wisconsin, against the City of Milwaukee, Officer Froilan Santiago, Officer Mark Kapusta, Officer Steven Stelter, Chief of Police Edward Flynn and Sergeant Walter McCulough in their official capacities as police officers for the City of Milwaukee.

2. Plaintiff Jimmy Harris alleges that Defendant Officer Santiago made an unreasonable

1

search and seizure of his person, assaulted, battered, and falsely imprisoned him by stopping him, seizing him, searching him, and physically restraining him without cause with the assistance of Officer Kapusta, Officer Stelter and Sergeant McCullough. Plaintiff alleges that these constitutional violations were committed as a result of the policies and customs of the City of Milwaukee, and that the City of Milwaukee is liable under the theory of respondeat superior for the torts committed by Defendants.

## JURISDICTION

3. This Court has jurisdiction over the subject matter of the Plaintiff's claims under 42 U.S.C. § 1983, where this municipality can be held liable in a civil rights action resulting from an officer under the color of law violating the Plaintiff's Constitutional rights.

4. This action is authorized by 42 U.S.C. § 1983, Wis. Stat. § 784.03(1)(a), and the amount in controversy exceeds the amount pursuant to 28 U.S. Code 1332 and is further authorized under common law tort and negligent actions.

## VENUE

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims alleged herein occurred within this judicial district and division. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b) because one or more of the Defendants reside in this judicial district and division.

## PARTIES

6. At all times relevant to this amended complaint, Plaintiff Jimmy Harris, was a resident of Wisconsin and resides at 5124 N. 32nd Street, Milwaukee, WI 53209.

7. The City of Milwaukee is a duly organized municipality in the State of Wisconsin located in the County of Milwaukee. It is a governmental subdivision organized and existing

2

under the laws of the State of Wisconsin. At all times pertinent to this action the City operated a Police Department organized under the laws of the State of Wisconsin.

8. Upon information and belief, defendant Officer Froilan Santiago was a police officer of the City of Milwaukee at the time the events occurred and was present for the duration of the events.

9. Upon information and belief, defendant Officer Mark Kapusta was a police officer of the City of Milwaukee at the time the events occurred and was present during a portion of the events. He failed to take reasonable steps to end the unlawful conduct alleged in this complaint.

10. Upon information and belief, defendant Officer Steven Stelter was a police officer of the City of Milwaukee at the time the events occurred and was present during a portion of the events. He failed to take reasonable steps to end the unlawful conduct alleged in this complaint.

11. Upon information and belief, defendant Chief of Police Edward Flynn was the Chief of Police at the time the events occurred and currently holds the same position.

12. Upon information and belief, defendant Sergeant Walter McCullough was a sergeant with the police department of the City of Milwaukee at the time the events occurred and was present during a portion of the events. He failed to take reasonable steps to end the unlawful conduct alleged in this complaint.

## BACKGROUND

13. On November 5, 2010, Plaintiff, Jimmy Harris, underwent rotator cuff surgery on his left arm.

14. On November 19, 2010, Jimmy was legally operating his vehicle leaving St Mary's

3

hospital on Northern Avenue with his fiancé, Charita Simms

15. At approximately 4:45p.m. Officer Froilan Santiago observed Mr. Harris operating his vehicle legally and choose to look up the vehicle registration despite having no cause for suspicion.

16. Officer Santiago then believed that the vehicle did not match the registration and engaged his lights to pull over Mr. Harris.

17. A video camera was installed on Officer Santiago's police vehicle that captured all portions of the events that occurred in front of the police vehicle.

18. Officer Santiago approached Mr. Harris's vehicle and informed him that the vehicle did not match the description of the vehicle registration.

19. Mr. Harris indicated that Officer Santiago had made an error and offered to show the error to Officer Santiago on his computer.

20. Officer Santiago accepted Mr. Harris's offer to show Officer Santiago the error in the registration information.

21. Officer Santiago suddenly grabbed Mr. Harris's left arm that had recently been operated on and used it to maneuver Mr. Harris around against the back of the car to pat Mr. Harris down.

22. Mr. Harris informed Officer Santiago that Officer Santiago was hurting Mr. Harris's arm.

23. Officer Santiago told Mr. Harris to stop resisting and instructed him to stop clutching at his left arm that Mr. Harris had told Officer Santiago that Officer Santiago was injuring.

Case 2:14-cv-01002-LA    Filed 07/19/16    Page 4 of 14    Document 41

24. Officer Santiago pulled out his handcuffs and directed Mr. Harris to sit at the curb, then called for backup.

25. Officer Santiago lunged towards Mr. Harris, grabbing Mr. Harris by Mr. Harris's left arm and throws Mr. Harris against Mr. Harris's vehicle.

26. Officer Santiago proceeded to struggle with Mr. Harris and removed Mr. Harris from the view of Officer Santiago's police vehicle camera to the rear of Officer Santiago's vehicle so that the cameras captured little of the events that occurred.

27. On information and belief, Officer Santiago beat Mr. Harris with Officer Santiago's arm and fist while slinging Mr. Harris around by Mr. Harris's injured arm.

28. On information and belief, Officer Santiago used Mr. Harris's arm to sling Mr. Harris to the ground on the curb to a seated position.

29. Officer Santiago pushed Mr. Harris to the ground.

30. Several additional police vehicles arrived at the scene, including Officer Mark Kapusta and Officer Steven Stelter.

31. A police officer that had arrived on the scene put Mr. Harris's hood over his head and stood on his head with all his weight, making it difficult for Mr. Harris to breath.

32. A second officer put a knee on Mr. Harris's neck and back causing him to nearly faint.

33. Two other officers pulled his arms from underneath Mr. Harris and bent them backwards, making Mr. Harris feel that his stitches would split open and causing him extreme pain that prevented him from fainting.

34. Upon information and belief, officers slammed Mr. Harris against the back of

5

Officer Santiago's vehicle and twisted Mr. Harris's injured arms behind him in order to handcuff Mr. Harris.

35.     Mr. Harris asked if he could leave, stating that he had no reason to believe that he had done anything wrong.

36.     Upon information and belief Officer Mark Kapusta made threatening remarks to Mr. Harris, telling Mr. Harris to "shut the fuck up, or you wont like what we are going to do to you in the back of the paddy wagon."

37.     The officers moved Mr. Harris around the back of Officer Santiago's squad car back into view of the front camera with Mr. Harris now limping significantly and placing Mr. Harris in the back of a paddy wagon in handcuffs.

38.     Several officers began a plain view search of the vehicle.

39.     Several officers entered Mr. Harris's vehicle to search the interior of the vehicle without permission from Mr. Harris conducted a lengthy search of the interior, including areas of the vehicle outside of Mr. Harris's immediate reach.

40.     An officer opened the trunk of the vehicle and three officers commenced a search of the trunk of the vehicle without permission from Mr. Harris and with no apparent cause.

41.     The encounter between Mr. Harris and Officer Santiago lasted more than twenty minutes that is viewable from the video, at which point Mr. Harris is still in custody.

42.     At no point during the encounter between Mr. Harris and Officer Santiago does Officer Santiago tell Mr. Harris why he is being arrested.

43.     An ambulance was called to the scene to provide medical attention for the

Case 2:14-cv-01002-LA     Filed 07/19/16     Page 6 of 14     Document 41

injuries Mr. Harris had sustained as the result of the events and was then transferred by ambulance to Froedert medical center for further medical treatment where Mr. Harris was provided with pain medication that caused him to fall asleep.

44. Upon waking up he saw Officer Santiago in his room, which caused him to fear for his safety because he did not understand why Officer Santiago was in his room.

45. Upon information and belief, Officer Santiago informed Mr. Harris that if he had accepted a ticket, Mr. Harris would not be in his current situation.

46. Mr. Harris invoked his Fifth Amendment right to remain silent, angering the officer and causing him to leave.

47. Sergeant McCullough, who had participated in the actions taken against Mr. Harris, came into Mr. Harris's room to inform Mr. Harris that he believe that Officer Santiago acted appropriately.

48. Mr. Harris invoked his right to silence to Sergeant McCullough.

49. The doctors recommended heart monitoring and blood pressure monitoring.

50. Officer Santiago took Mr. Harris to the basement of the courthouse parking structure, leaving him handcuffed in the squad car for two hours.

51. No charges were filed against Mr. Harris.

52. As a direct and proximate result of these events, Mr. Harris suffered the following injuries and damages:

    a. Violation of his constitutional rights under the Fourth and Fourteenth Amendments to the United Sates Constitution to be free from an unreasonable search and seizure of his person;

Case 2:14-cv-01002-LA    Filed 07/19/16    Page 7 of 14    Document 41

    i. Loss of his physical liberty;

    ii. Excessive and unreasonable force used to arrest him;

    iii. Intentional, offensive contact with his body; and

    iv. Fear of imminent peril resulting from an offer or attempt to injure him.

    b. Additional injury to his surgically repaired left shoulder.

53. The actions of Defendants violated the clearly established and well-settled federal constitutional rights of Plaintiff of freedom from the unreasonable seizure of his person.

54. At all relevant times, Defendants were acting under color of law and under color of authority as police officers, employees, and agents or servants of the City of Milwaukee, WI.

## COUNT I
### *42 U.S.C. §1983 Violation of Equal Protection Clause of the 14th Amendment, Based on Racial Profiling in Traffic Stops Against Officer Froilan Santiago*

55. Plaintiffs repeat and reallege and incorporate by reference all of the allegations set forth in paragraphs 1 through 54.

56. Officer Froilan Santiago was an officer of the Police Department of Milwaukee at the time of the incident who was reasonably understood to be acting under the color of state law.

57. Officer Froilan Santiago violated the Equal Protection Clause of the 14th Amendment by choosing to look up the registration on Mr. Harris's vehicle without a reasonable cause of suspicion other than Mr. Harris's race.

58. As the result of the violation of his 14th Amendment right, Mr. Harris suffered pain and suffering, sustained physical injury to his left shoulder and was deprived of his

8

constitutional right to liberty.

**COUNT II**
***42 U.S.C. §1983 Unlawful Arrest or Detention Against Officer Froilan Santiago***

59.    Plaintiffs repeat and reallege and incorporate by reference all of the allegations set forth in paragraphs 1 through 54.

60.    Officer Froilan Santiago was an officer of the Police Department of Milwaukee at the time of the incident who was reasonably understood to be acting under the color of state law.

61.    Officer Froilan Santiago placed Mr. Harris under arrest without a warrant or probable cause, violating Mr. Harris's Fourth Amendment right to be free from arrest without a warrant or probable cause.

62.    Other officers at the scene did not act to stop unlawful detention.

63.    As the result of the unlawful arrest, Mr. Harris suffered pain and suffering, sustained physical injury to his left shoulder and was deprived of his constitutional right to liberty.

**COUNT III**
***42 U.S.C. §1983 Use of Excessive Force in Making an Arrest Against Officer Froilan Santiago***

64.    Plaintiffs repeat and reallege and incorporate by reference all of the allegations set forth in paragraphs 1 through 54.

65.    Officer Froilan Santiago was an officer of the Police Department of Milwaukee at the time of the incident who was reasonably understood to be acting under the color of state law.

66.    Officer Froilan Santiago used excessive force in arresting Mr. Harris.

67.    As the result of the excessive force used to arrest him, Mr. Harris suffered pain and suffering, sustained physical injury to his left shoulder and was deprived of his

9

constitutional right to liberty.

## COUNT IV
### 42 U.S.C. §1983 Illegal Search and Seizure Against Officer Froilan Santiago, Officer Mark Kapusta, Officer Steven Stelter, and Sergeant Walter McCullough

68. Plaintiffs repeat and reallege and incorporate by reference all of the allegations set forth in paragraphs 1 through 54.

69. Officer Froilan Santiago, Officer Mark Kapusta, Officer Steven Stelter, and Sergeant Walter McCullough were officers of the Police Department of Milwaukee at the time of the incident who was reasonably understood to be acting under the color of state law.

70. Defendant Santiago's seizure of Mr. Harris by detaining him outside of Mr. Harris's vehicle and executing a pat search subject to 42 U.S.C. 1983 violated the fourth amendment constitutional rights which provides, "the rights of the people to be secure in their persons, houses, papers and effects against unreasonable search and seizures."

71. Upon information and belief, the stop and search of Mr. Harris by Officer Santiago constituted an unreasonable search and seizure, violated Milwaukee Police policies, which were in place or should have been in place if not for the reckless disregard by the City of Milwaukee in not providing policies to protect the constitutional right of citizens.

72. Upon Information and belief, Officer Forilan Santiago, Officer Mark Kapusta, Officer Steven Stelter, and Sergeant Walter McCullogh executed an illegal search of the interior of Mr. Harris's vehicle, including the seating area in the front of the vehicle and the trunk without permission or probable cause.

73. As the result of the illegal search, Mr. Harris suffered pain and suffering, sustained physical injury to his left shoulder and was deprived of his constitutional right to liberty.

## COUNT V

Case 2:14-cv-01002-LA    Filed 07/19/16    Page 10 of 14    Document 41

**42 U.S.C. §1983 Having Failed to Adequately Train, Supervise, or Control Individual Peace Officers Who Violate Plaintiff's Civil Rights Against City of Milwaukee**

74. Plaintiffs repeat and reallege and incorporate by reference all of the allegations set forth in paragraphs 1 through 54.

75. Police officers of the Police Department of Milwaukee are reasonably understood to be acting under the color of state law.

76. Prior to November 19th, 2010, the City of Milwaukee Police Department developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of persons in the City of Milwaukee, which caused the violation of Plaintiff's rights.

77. It was the policy and/or custom of the City of Milwaukee Police Department to fail to exercise reasonable care in hiring its police officers, including Defendants Santiago, Kapusta and Stelter, thereby failing to adequately prevent constitutional violations on the part of its police officers.

78. It was the policy and/or custom of the Milwaukee Police Department to inadequately supervise and train its police officers, including Defendants Santiago, Kapusta and Stelter, thereby failing to adequately discourage further constitutional violations on the part of its police officers.

79. As a result of the above described policies and customs, police officers of the City of Milwaukee, including Defendants Santiago, Kapusta and Stelter, believed that their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be tolerated.

80. The above described polices and customs demonstrate a deliberate indifference on the part of the City of Milwaukee to the constitutional rights of persons within the City of Milwaukee, and were the cause of the violations of Plaintiff's rights alleged herein.

11

81. As the result of the City of Milwaukee's failure to train, supervise, or control its peace officers, Mr. Harris suffered pain and suffering, sustained physical injury to his left shoulder and was deprived of his constitutional right to liberty.

## COUNT VI
### *Respondeat Superior City of Milwaukee*

82. Plaintiffs repeat and reallege and incorporate by reference all of the allegations set forth in paragraphs 1 through 54.

83. Defendant City of Milwaukee is liable for the assault, battery, and false imprisonment committed against Plaintiff by Defendants Santiago, Kapusta and Stelter. The City Milwaukee employed the officers, who committed assault, battery, and false imprisonment while acting in the scope of their employment

## COUNT VII
### *Common Law Assault Against Officer Froilan Santiago and Officer Steven Stelter*

84. Plaintiffs repeat and reallege and incorporate by reference all of the allegations set forth in paragraphs 1 through 54.

85. Defendant Santiago assaulted plaintiff by making statements at the hospital that caused Mr. Harris to reasonably fear for his safety.

86. Defendant Stelter assaulted plaintiff by making threatening statements to Mr. Harris while Mr. Harris had been seized, was unable to remove himself from the control of Officer Steven Stelter and had already been injured by Officer Santiago so that the statements made by Mr. Stelter that caused Mr. Harris to reasonably fear for his safety.

## COUNT VIII
### *Common Law Battery Against Officer Froilan Santiago*

87. Plaintiffs repeat and reallege and incorporate by reference all of the allegations set forth in paragraphs 1 through 54.

12

88.     Defendant Santiago battered Plaintiff by intentionally and offensively contacting Plaintiff's body when he grabbed Plaintiff's arm and used the injured arm to maneuver Plaintiff, then when pinned him against the car and when he conducted a pat search without the requisite level of suspicion.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that this court:

A.  Enter a judgment in favor of the Plaintiff and against the Defendants;

B.  Enter an order declaring Officer Santiago and other officers conduct unconstitutional;

C.  Award Plaintiff punitive damages against Defendants pursuant to Wis. Stat. § 106.52;

D.  Award Plaintiff exemplary damages to the full extent allowed by Wis. Stat. § 252.14;

E.  Award Plaintiff's counsel reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable provisions of law;

F.  Enter a permanent injunction, upon proper motion, requiring Defendant City of Milwaukee to adopt appropriate policies related to the hiring and supervision of its police officers; and

G.  Grant to Plaintiff such other and further relief as may be just and proper under the circumstances, including but not limited to appropriate injunctive relief.

## JURY TRIAL DEMAND

Plaintiff requests trial by jury on all matters as to which he is entitled by law, pursuant to the Seventh Amendment of the Constitution of the United States.

13

Respectfully submitted, this Monday, July 18, 2016.

Timothy Baldwin
Attorney for Plaintiff

14