**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

JIMMY HARRIS,

    Plaintiff,

v.

CITY OF MILWAUKEE, OFFICER FROILAN SANTIAGO, OFFICER MARK KAPUSTA, OFFICER STEVEN STELTER, CHIEF OF POLICE EDWARD FLYNN, and SERGEANT WALTER MUCULOUGH,

    Defendants.

Case No.: 14-CV-1002

Jury Trial Demanded

---

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT AS TO LIABILITY ONLY PRUSUANT TO FED.R.CIV.P. 56(f)**

---

NOW COMES Plaintiff Jimmy Harris, by his attorneys, and pursuant to Fed.R.Civ.P. 56(f), files this Reply Brief in Support of his motion for summary judgment, as to liability only, against Defendants.

## ARGUMENT

**I. THE COURT SHOULD IGNORE DEFENDANTS MANUFACTURE AN ISSUE OF FACT WITH REGARDS TO OFFICER SANTIAGO'S ILLEGAL TRAFFIC STOP OF JIMMY HARRIS.**

Rather than just admit that Officer Santiago initiated an illegal stop of Harris's vehicle because of the vehicle's color, as Defendants' previously argued when they moved for summary judgment, Defendants now argue that Santiago actually had a basis to pull Harris over. More to the point and distilling down Defendants' arguments, Defendants now claim that an issue of fact is present to deny Jimmy Harris summary judgment, as Officer Santiago claims that Mr. Harris "allegedly" was weaving while

allegedly driving on North Prospect Avenue, in the City of Milwaukee, just south of North Avenue, prior to turning onto North Avenue. And, Defendants argue further that because Officer Santiago had a basis, no matter how "thin", to pull over Mr. Harris, this Court should deny Harris's motion for summary judgment.

The trouble with Defendants' argument is two-fold: First, Santiago never identified the alleged "weaving" by Harris's vehicle as the basis of the illegal stop in the arrest report or subsequently when the stop was investigated by the Milwaukee Police Department, nor did he ever state, in Response to Plaintiff's Requests to Admit, dated January 26, 2017, that Harris was pulled over for "weaving." Rather, in all three situations, Santiago stated that the sole basis for the illegal stop was because of the Vehicle's color purportedly not matching records maintained by the State of Wisconsin Department of Motor Vehicles:

> On Friday, November 19, 2010, at about 4:45 pm, I (Squad 1230) initiated a traffic stop of an auto (black, 2dr, Chrysler, Limited), with WI 356SCJ, at 1600 E. North Ave., in the city and county of Milwaukee, for plates not listing to auto. Upon the traffic stop, I spoke with the driver, Jimmy L. HARRIS (b/m, 08-14-73) who stated and had asked what was my reasons for stopping him. I explained to HARRIS the reason for the stopped, but HARRIS stated that this was wrong and he was stopped before and that the other officer's were also wrong. During this stop, I advised HARRIS to step out of his car and had directed him to the rear of his auto. For my safety, I advised HARRIS to turn around away from me. During this process, HARRIS automatically raised his arms up to his side like a plane, I then advised him to keep his arms up as I pat him down for any weapons or guns. During this process, HARRIS was very uncooperative and had pulled away from the officer's. I had instructed HARRIS several times to keep his arms up. HARRIS continued to passively resist the officer's during officer's investigation. HARRIS pulled away from officer's several times. HARRIS refused to obey my official lawful order to quit resisting and not pull away as I attempt to restrain HARRIS at this point. HARRIS wrestled with officer's to the ground as additional officer's arrived at the scene to help restrain HARRIS.

Declaration of Nathaniel Cade, Jr. in Support of Plaintiff's Motion for Summary Judgment ("Cade Decl."), Ex. 10 at p. 2 (Incident Report containing Officer Santiago's Notes regarding reasons for arrest).

> On Wednesday, February 15, 2012 I, Detective Wilkerson, interviewed Police Officer Froilan Santiago in the presence of his attorney, Brendan Matthews. Officer Santiago was advised of the above listed complaint against him and that his was a criminal investigation. Officers Santiago was further advised that the interview was being recorded. Officers Santiago acknowledged the recording and agreed to make a statement.
>
> Officer Santiago stated he did recall the traffic stop relating to this complaint. Officer Santiago stated he was westbound in the area of E. North Avenue and N. Farwell when he observed Harris's vehicle westbound on E. North Ave. Officer Santiago related that a routine check of Harris's license plate revealed that it listed to a gray Sebring. Officer Santiago indicated the vehicle he observed Harris driving at the time appeared to be black. .
>
> Officer Santiago indicated he initiated a traffic stop on the vehicle Harris was driving at the time to confirm that the plates did list to the vehicle Harris was driving. Officer Santiago related he could not determine or distinguish who was driving the vehicle or how many occupants were in the vehicle when he initiated the stop. Officer Santiago indicated it was not uncommon that licenses plates did not match the vehicles that he

Cade Decl., at Ex. 11 (Santiago Deposition Exhibit 3).

> **REQUEST NO. 9:** Admit that Froilan Santiago pulled Harris over during a traffic stop on November 19, 2010.
>
> **RESPONSE:** Admit that on that date Officer Santiago initiated a traffic stop of an automobile for plates not listing to the automobile and that the driver of the stopped vehicle was Jimmy Harris.
>
> **REQUEST NO. 10:** Admit that Santiago indicated he pulled Harris over because the vehicle in which Harris was operating did not match the registration.
>
> **RESPONSE:** Admit that on that date Officer Santiago initiated a traffic stop of an automobile for plates not listing to the automobile and that the driver of the stopped vehicle was Jimmy Harris.

Cade Decl., Ex. 12 (Defendants' Responses to Plaintiff's Requests to Admit)

The second problem with this argument is that Harris was never traveling north on Prospect Avenue prior to turning on North Avenue. Instead, Harris was several blocks away at Columbia St. Mary's Hospital, waiting to pick up his fiancé, Charita Sims, who had a minor procedure performed on her foot. Upon departing St. Mary's, Harris traveled west on North Avenue until his regrettable encounter with Officer Santiago. *See* Declaration of Nathaniel Cade, Jr. in Opposition to Defendants' Motion for Summary Judgment ("Original Cade Decl."), dated May 3, 2018, Ex. 2 (Jimmy Harris Deposition Transcript), at 183:1-9.

So, the issue for this Court, really, is whether it believes what Officer Santiago stated in the arrest report he originally drafted on November 19, 2010 (which was the night of the arrest)(Cade Decl., Ex. 10), the oral statement that Officer Santiago gave on February 15, 2012 with counsel present to MPD (Cade Decl., Ex. 11) when the Milwaukee Police Department investigated the matter, Defendants' Responses to Requests to Admit, dated January 26, 2017 (Cade Decl., Ex. 12), or what Defendants originally stated as the grounds for their motion for summary judgment, or alternatively, a stray comment that Officer Santiago made in his deposition about a vehicle "weaving" but not crossing over any lines, not being enough to initiate a traffic stop or not in violation of any traffic statute or ordinance?

1. <u>The Actual Basis for the Traffic Stop Had Nothing To Do With Mr. Harris' Driving, As Santiago Admits Harris Had Not Violated Any Traffic Laws.</u>

As noted, Defendants now claim that Officer Santiago articulated a basis to pull over Mr. Harris, other than the color of the Vehicle, when in his deposition he alleges that Mr. Harris was "weaving" while driving the Vehicle. The problem with this argument is that

it is contrary to what Santiago actually said in his deposition where he admits that Harris did not break any traffic laws with his alleged "weaving."

More specifically, in his deposition, Santiago admits that Harris's alleged "weaving" was not going back and forth over the line or some other traffic violation, but rather a slight movement of the Vehicle that caused Santiago to run the Vehicle's plates:

```
Page 93
1    to run the plates.
2         Is there any reason why it was never
3    mentioned in your interview?
4  A It was because at that point in time I didn't
5    think that it was important initially because
6    that wasn't at that point when I -- the reason
7    why I stopped him then when I turned on the
8    lights, because after I ran his plate, after
9    noticing that the vehicle didn't match, that's
10   when, to me, my part -- the reason why I pulled
11   him over.
12        I didn't pull him over -- I was
13   watching him, observing his weaving, but it
14   wasn't to a point where it was just going over
15   the line. It's just a notification that he made
16   some kind of movement that appears to be --
17   maybe he's intoxicated. I didn't pull him over
18   for -- I didn't -- it wasn't why -- it was, to
19   me, important why he -- the whole entire traffic
20   stop.
```

Original Cade Decl., at Ex. 3 (Santiago Deposition), at 93:12-15 (emphasis added).

Indeed, even Santiago admitted that at the time he ran the plates on the Vehicle, Harris had not committed any traffic violation:

> 17    But at that point in time wasn't --
> 18    when I did his traffic stop, it overrides that,
> 19    thinking to me that this guy, when I'm talking
> 20    to him, is not based on -- there's no reason for
> 21    me to say he's disregarding any type of statute
> 22    based on his moving like that. He's not causing
> 23    any traffic violations. It's observation of a
> 24    person just weaving, not to the extreme, enough
> 25    for me to notice that there might be something

*Id.* (Santiago Deposition), at 94:20-23 (emphasis added).

But this is important – if there is no violation of a traffic statute or ordinance, as Santiago admits, that would have allowed Santiago to initiate a traffic stop of Harris, then the mere pulling of the Vehicle over, once he ran the license plates, because the color of the Vehicle, as Santiago perceived it, does not match what is recorded with the Department of Motor Vehicles, violates the law. *See* Wis. Stat. § 349.02(2)(c).[1] Merely claiming that "saw the car weave" is not a basis to initiate a stop – and Santiago knows that because he did not include it in his official police report. Such a traffic stop would not pass muster. Nor can it serve as the ground for a stop once Santiago claimed the Vehicle's color did not match the DMV records.

   2. <u>Santiago Knows That What He Described In His Deposition As "Weaving" Was Not Grounds For A Traffic Stop And That It Did Not Warrant Mention In His Arrest Report.</u>

---

[1] "Notwithstanding par. (a), a law enforcement officer ***may not stop a vehicle solely because the vehicle's color differs from the color stated in the application for registration of that vehicle***. This paragraph does not limit the authority of a law enforcement officer to issue a citation for improper registration of a vehicle whose color differs from the color stated in the application for registration of the vehicle, if the difference is observed in the course of a stop or inspection made for other purposes."
(emphasis added)

When asked why he failed to include the alleged fact that Harris was "weaving" in his arrest report, Santiago admitted that it was not necessary to put such information in the report because Harris was not really "weaving" all over the place and going off the lanes that would warrant it in the report and serve as the basis for the traffic stop:

> 21  As soon as I -- if he was weaving --
> 22  continuous weaving going off the lanes, then
> 23  yes. I would have included that. But he
> 24  wasn't -- he was weaving not to go all over the
> 25  lanes where it's causing to me to think that

Original Cade Decl., Ex. 3 (Santiago Deposition), at 93:21-23 (emphasis added).

So if Harris was not really "weaving", what was the purpose of pulling Harris over? Because the alleged "weaving" served as the basis for Santiago to run the Vehicle's plates. But the weaving was not the basis for the traffic stop; it was the car color not matching DMV records:

> 2   Is there any reason why it was never
> 3   mentioned in your interview?
> 4 A It was because at that point in time I didn't
> 5   think that it was important initially because
> 6   that wasn't at that point when I -- the reason
> 7   why I stopped him then when I turned on the
> 8   lights, because after I ran his plate, after
> 9   noticing that the vehicle didn't match, that's
> 10  when, to me, my part -- the reason why I pulled
> 11  him over.

*Id.* (Santiago deposition), at 93:8-11 (emphasis added).

3. <u>Defendants Previously Argued That Harris Was Pulled Over Because The Vehicle Color Did Not Match DMV Records – The Court Should Hold Them To That Legal Assertion Under Judicial Estoppel.</u>

When the defendants initially moved for summary judgment, they were very confident that Santiago was legally justified in pulling Harris over solely based on the Vehicle's color:

> In the present case, Officer Santiago had reasonable suspicion of a traffic law violation. He observed an automobile with a Wisconsin registration that did not match one important required descriptive feature of the vehicle—the color. PFOF 12, 13, 21, 23, 29, 30. To the officer's eye, the car appeared to be black while the registration was for a gray vehicle. *Id.* Even the video taken from the squad cam confirms that the vehicle appears to be a very dark color and not gray. PFOF 29.
>
> Officer Santiago thus had reasonable suspicion to stop the vehicle and its occupants, including Mr. Harris, for the traffic violation of operating a motor vehicle which was required to be registered and which was not. Wis. Stats. § 341.04(1). Even upon examining the VIN on the dash and apparently confirming that it matched the vehicle for which he had the description of a gray color, it was still reasonable for the officer to continue the discontinue the stop; it was, instead, reasonable to continue the stop and to seek further information or explanation. PFOF 23. The VIN plate could, of course, have been removed from one properly registered car and placed in another, a separate violation of Wisconsin law. Wis. Stats. § 342.30(1g)(a). The vehicle could also have been painted to disguise it; that could have been done to avoid responsibility or

Defendants' Brief in Support of their Motion for Summary Judgment, ECF #69, dated February 8, 2018, at 12.[2]

---

[2] As the Court may recall, the parties stipulated that "Defendants [would] withdraw their Motion for Summary Judgment . . . and all documents in support of their Motion for Summary Judgment.".

Now, Defendants want to backtrack and argue that the alleged "weaving" was grounds for a stop (even though Santiago admits in his deposition, *supra.*, that Harris did not violate any traffic laws and the basis for the stop was the color). The Court should hold Defendants to their prior assertion that the discrepancy with regards to the car color was the basis for the illegal traffic stop and not allow Defendants to argue a new and different reason justified the stop. Defendants new grounds for avoiding summary judgment is inconsistent with the position they took before Harris moved for summary judgment pursuant to Rule 56(f). The new position that Defendants now take is a sham, and this Court should reject the legal knots that Defendants now create. *See, e.g.*, *Richardson v. Bonds,* 860 F.2d 1427, 1433 (7th Cir.1988) (a newly-invented and last minute change in position that is offered in response to summary judgment does not create a genuine issue of material fact). Indeed, "[i]t is well established that a party cannot create a genuine issue of fact by submitting an affidavit containing conclusory allegations which contradict plain admissions in prior deposition or otherwise sworn testimony." *Id.* (quoting *Diliberti v. United States,* 817 F.2d 1259, 1263 (7th Cir.1987)).

And, in a motion that will be filed shortly, the Court also should sanction the Defendants for filing a frivolous pleading pursuant to Rule 11.

---

Stipulation, ECF #83, dated May 17, 2018. The Stipulation, however, does not prevent Plaintiff from using Defendants' arguments and admissions against Defendants.

## CONCLUSION

Santiago never should have pulled Harris over. Instead, Santiago had several choices that unfortunate night – he could have simply followed Harris, hoping that he would commit a traffic violation to justify a stop; Santiago could have contacted MPD's dispatch about the Vehicle and sought guidance on what he should do; or, Santiago could have just claimed that the car color not matching the DMV record (assuming he had received adequate training about the state statute) was just a fluke. Instead, Santiago chose to initiate a traffic stop that was illegal and was not warranted. As a result of Santiago making a purposeful and wrong choice, Harris suffered severe and debilitating injuries from which he will never recover. It is time to end the Defendants' ability to play games and claim that there was a justification to cause such heavy and burdensome injuries. Summary judgment is warranted as to liability.

For the reasons stated herein, in Plaintiff's summary judgment response documents, and in the pleadings, generally, Plaintiff believes the Court has enough information at its disposal to award Plaintiff summary judgment as to liability only so that this matter can proceed to trial on damages.

Dated this 7th day of August, 2018.

**CADE LAW GROUP LLC**

By: s/Nathaniel Cade, Jr.
    Nathaniel Cade, Jr.
    P.O. Box 170887
    Milwaukee, WI  53217
    (414) 255-3802 (phone)
    (414) 255-3804 (fax)
    nate@cade-law.com

Attorneys for Plaintiff