JIMMY HARRIS,

    Plaintiff,

v.

CITY OF MILWAUKEE, OFFICER FROILAN SANTIAGO, OFFICER MARK KAPUSTA, OFFICER STEVEN STELTER, CHIEF OF POLICE EDWARD FLYNN, and SERGEANT WALTER MUCULOUGH,

    Defendants.

Case No.: 14-CV-1002

Jury Trial Demanded

## PLAINTIFF'S RESPONSE TO DEFENDANTS' ADDITIONAL PROPOSED FINDINGS OF FACT

Plaintiff, Jimmy Harris, by his attorneys, as and for a response to the Defendants' Additional Proposed Findings of Fact, responds as follows:

1. The plaintiff, Jimmy Harris, was involved in a traffic stop by Officer Santiago on November 19, 2010. Smokowicz Affidavit, Attachment A (Harris Deposition), pp. 1, 17.

RESPONSE: No Dispute.

2. Harris' fiancé, Charita Sims, had to go to the doctor because of her foot and asked Harris to take her to the hospital sometime around 3 p.m. Smokowicz Affidavit, Attachment A (Harris Deposition), p. 18-19.

RESPONSE: No Dispute.

3. She was going to the emergency room at the hospital on North Avenue near the lakefront. Smokowicz Affidavit, Attachment A (Harris Deposition), p. 19.

RESPONSE: No Dispute.

4. After being at the hospital for about an hour or so, Harris pulled up to the front of the hospital and Ms. Sims got into the car. Smokowicz Affidavit, Attachment A (Harris Deposition), p. 21-22.

RESPONSE: No Dispute.

5. After picking up Sims, Harris pulled out onto North Avenue, heading west. Smokowicz Affidavit, Attachment A (Harris Deposition), p. 22.

RESPONSE: No Dispute.

6. Before encountering Officer Santiago, Harris stopped at one stoplight. Smokowicz Affidavit, Attachment A (Harris Deposition), p. 22-23.

RESPONSE: No Dispute.

7. After Harris had turned onto North Avenue he noticed Officer Santiago coming from off of a side street, staring at Harris, but Harris did not think anything of it. Smokowicz Affidavit, Attachment A (Harris Deposition), p. 23

RESPONSE: Dispute. Harris did not "turn" onto North Avenue, as he already was traveling on North Avenue. *See* Defendants' Additional Proposed Findings of Fact (this document), at Number 5.

8. It was nighttime at that time, with the streets illuminated with streetlights. Smokowicz Affidavit, Attachment A (Harris Deposition), p. 23-24.

RESPONSE: No Dispute.

9. When Harris pulled out, Officer Santiago pulled out right behind Harris.

Smokowicz Affidavit, Attachment A (Harris Deposition), p. 24.

RESPONSE: Disputed. *See* Response to Defendants' Additional Proposed Findings of Fact (this document), numbers 5 and 7.

10. As Harris proceeded west on North Avenue, he noted Officer Santiago "pintailing" him, that is, coming up too close behind him and then backing off, and then repeating those actions. Smokowicz Affidavit, Attachment A (Harris Deposition), p. 26.

RESPONSE: No Dispute.

11. This went on for about two to three blocks, but there was a stoplight at the first block along this route where Harris had to come to a stop and Officer Santiago stopped behind him. Smokowicz Affidavit, Attachment A (Harris Deposition), p. 26-28.

RESPONSE: No Dispute.

12. Harris was driving a 1999 Chrysler Sebring convertible which he owned and purchased around 2005. Smokowicz Affidavit, Attachment A (Harris Deposition), p. 32.

RESPONSE: No Dispute.

13. Harris recalls that the car was the original color as manufactured when he purchased it and that the color was gray pearl. Smokowicz Affidavit, Attachment A (Harris Deposition), p. 34.

RESPONSE: No Dispute.

14. Harris noticed the emergency lights on Officer Santiago's vehicle within the third block. Smokowicz Affidavit, Attachment A (Harris Deposition), p. 38.

RESPONSE: No Dispute.

15. Harris travelled about a quarter of the block and pulled over onto a

bridge.

Smokowicz Affidavit, Attachment A (Harris Deposition), p. 38.

      RESPONSE: No Dispute.

    16. Harris waited for the officer to come out and Harris had his license in his hand.

Smokowicz Affidavit, Attachment A (Harris Deposition), p. 38-39.

      RESPONSE: No Dispute.

    17. When Officer Santiago came to the car, Harris asked, "[w]hat seems to be the probable cause for stopping me, Officer?" Smokowicz Affidavit, Attachment A (Harris Deposition), p. 42-43.

RESPONSE: No Dispute.

    18. Harris also said, "I would like to have a supervisor." Smokowicz Affidavit, Attachment A (Harris Deposition), p. 44.

RESPONSE: No Dispute.

    19. While uttering the first sentence, Officer Santiago was at Harris' vehicle windshield, checking the VIN (vehicle identification number); while Harris was making a request for a supervisor, Officer Santiago asked for Harris' license. Smokowicz Affidavit, Attachment A (Harris Deposition), pp. 44, 46.

RESPONSE: No Dispute.

    20. Harris asked for a supervisor because of a prior problem with Wauwatosa police. Smokowicz Affidavit, Attachment A (Harris Deposition), p. 45.

      RESPONSE: No Dispute.

    21. When asked to identify the probable cause for the stop, Officer Santiago

said the car was stolen and the VIN did not match. Smokowicz Affidavit, Attachment A (Harris Deposition), p. 47.

RESPONSE: Disputed. Santiago actually told Harris that the car was "fucking stolen."

22. Harris told the officer that had to be wrong. Smokowicz Affidavit, Attachment A (Harris Deposition), p. 47.

RESPONSE: No Dispute.

23. Officer Santiago told Harris, "I can fucking show you on the squad car computer. Come on, I'll show you. You want to see it?" Smokowicz Affidavit, Attachment A (Harris Deposition), p. 47-48; Smokowicz Affidavit, Attachment E (Santiago Deposition), p. 45.

RESPONSE: No Dispute.

24. Harris exited the car, but before he got past the back end of the vehicle, Officer Santiago turned Harris around and started to frisk him; Santiago was not going to allow Harris into the squad if Harris had any weapons. Smokowicz Affidavit, Attachment A (Harris Deposition), p. 48; Smokowicz Affidavit, Attachment E (Santiago Deposition), p. 69-71.

RESPONSE: No Dispute about what Harris observed. Dispute as to what was Santiago's mental state.

25. Officer Santiago told Harris to put his hands up, "started throwing [Harris'] arm up," and Harris told Santiago that he could not because Harris had just had a surgery. Smokowicz Affidavit, Attachment A (Harris Deposition), pp. 48, 50.

RESPONSE: No Dispute.

26. On November 11, Harris' surgery to his left arm included a rotator cuff

surgery and removal of part of his humerus bone. Smokowicz Affidavit, Attachment A (Harris Deposition), p. 50-51.

RESPONSE: No Dispute.

27. Harris' arm was in a sling on the night of the incident, but he took off the sling to drive and drove with only one arm on the night of the incident; Harris' physician told him to continue wearing the sling until his follow-up visit which was scheduled for a date after the incident involving Milwaukee police. Smokowicz Affidavit, Attachment A (Harris Deposition), p. 51-56.

RESPONSE: No Dispute.

28. The cameras in Officer Santiago's squad car recorded a number of the physical and a portion of the verbal interactions between Harris and Santiago. Supplemental Declaration of Cade (Doc. 73), Exhibit 9.

RESPONSE: No Dispute.

29. The vehicle being operated by Harris as displayed in the video looks to be a very dark color and does not appear to be a pearl gray. Supplemental Declaration of Cade (Doc. 73), Exhibit 9.

RESPONSE: Disputed. This is a question of fact for a jury as to the color and the mental impression of what Santiago observed and believed.

30. The record for the call by Officer Santiago into the police communications system shows for the very first entry at 4:45 p.m. (16:45 in military time as displayed in the record) the comment from the officer that, "BLACK, CHRYSLER, 2 DOR [apparently door], 2OCC [apparently occupants]; PLATES DON'T LIST." Smokowicz Affidavit, Attachment B (Detailed History for Police Call #103231445); Smokowicz Affidavit,

Attachment E (Santiago Deposition), pp. 22, 26, 32, 33.

RESPONSE: No Dispute.

31. At approximately the 3:00 minute mark of the video, Officer Santiago appears to attempt to pat down Harris at the rear of the Chrysler vehicle. Supplemental Declaration of Cade (Doc. 73), Exhibit 9.

RESPONSE: No Dispute.

32. In the course of the attempt to pat Harris down, Officer Santiago has to bring Harris' arms up to should height at least twice and each time Harris brings down his arms. Supplemental Declaration of Cade (Doc. 73), Exhibit 9 at approximately the 3:00 minute mark through the 3:15 minute mark.

RESPONSE: No Dispute.

33. Officer Santiago then directs Harris to sit on the curb in the area between the Chrysler and the squad car; rather than immediately complying with the directive, Harris stands on the curb and speaks loudly to the officer and gestures with his arms. Supplemental Declaration of Cade (Doc. 73), Exhibit 9 at approximately the 3:21 minute mark through the 3:29 minute mark.

RESPONSE: Dispute as to argumentative language about Harris not "immediately complying." This is a jury determination.

34. After Officer Santiago appears to reach for his handcuffs, walks behind Harris, and continues to direct Harris to sit, and after a further verbal exchange, Harris ultimately sits on the curb. Supplemental Declaration of Cade (Doc. 73), Exhibit 9 at approximately the 3:28 minute mark through the 3:37 minute mark.

RESPONSE: No Dispute.

35. Harris continues to have an exchange with Officer Santiago once seated on the curb, continuing to speak loudly to the officer, until Officer Santiago radios for assistance (heard on the radio as an identification of squad 1230) and the officer then approaches Harris to place him in handcuffs. Supplemental Declaration of Cade (Doc. 73), Exhibit 9at approximately the 3:38 minute mark through the 4:01 minute mark.

RESPONSE: Dispute as to Harris "continuing to speak loudly to the officer" as there is no sound.

36. In his initial efforts to handcuff Harris, Officer Santiago is walked or pulled along out into the street by Harris and then struggles with Harris against the driver side of the car in attempting to handcuff Harris. Supplemental Declaration of Cade (Doc. 73), Exhibit 9 at approximately the 4:01 minute mark through the 4:07 minute mark.

RESPONSE: Dispute. The actions on the tape are self-evident.

37. In struggling against the officer, Harris will not allow the officer to bring Harris' hands behind his back in order to cuff Harris. Supplemental Declaration of Cade (Doc. 73), Exhibit 9 at approximately the 4:07 minute mark through the 4:39 minute mark.

RESPONSE: No Dispute, as Harris informed Santiago that he had shoulder surgery and he was trying to protect his already injured arm.

38. In the course of the struggle to handcuff Harris, Officer Santiago apparently uses minimal force to bring Harris' hands from his front to his back. Supplemental Declaration of Cade (Doc. 73), Exhibit 9 at approximately the 4:07 minute mark through the 4:39 minute mark.

RESPONSE: Dispute as to the amount of force. This is a jury question.

39. Officer Santiago forced Harris up against the rail of the bridge; Harris hooked his right arm over the bridge so that Santiago could not force him over it and Harris kept his left arm up against the front of his own body. Smokowicz Affidavit, Attachment A (Harris Deposition), p. 85-86.

RESPONSE: No Dispute.

40. Harris and Officer Santiago move to the side of the squad during the struggle and their actions can only be viewed briefly and in a way that displays only portions of their bodies; during most of this time, however, it appears that Harris is located against the rear side of the squad car, and again physically resists Officer Santiago's efforts to handcuff him behind his back. Supplemental Declaration of Cade (Doc. 73), Exhibit 9 at approximately the 4:39 minute mark through the 6:24 minute mark.

RESPONSE: Dispute as the characterizations on the video that are not plainly observable. This is a jury issue.

41. Officer Santiago then bear-hugged Harris and slammed him into the squad car and Harris then put both of his hands on the squad trunk. Smokowicz Affidavit, Attachment A (Harris Deposition), p. 86-89.

RESPONSE: No Dispute.

42. Harris then brought his right hand back but could not bring his left hand to the back and Officer Santiago tried to force both of them back. Smokowicz Affidavit, Attachment A (Harris Deposition), p. 89-90.

RESPONSE: No Dispute.

43. Officer Santiago then hit the back of Harris' neck. Smokowicz Affidavit,

Attachment A (Harris Deposition), p. 91.

RESPONSE: No Dispute.

44. Harris then is brought to the sidewalk pavement by Officer Santiago on Harris' left side and then ends up facing upward with Santiago's one knee on Harris' shoulder and the other on his throat; Harris appears to remain there until Officers Stelter and Kapusta arrive. Supplemental Declaration of Cade (Doc. 73), Exhibit 9 at approximately the 6:23 minute mark through the 7:56 minute mark; Smokowicz Affidavit, Attachment A (Harris Deposition), p. 96- 100.

RESPONSE: Dispute as to what Officer Santiago did on a videotape, as his actions are not visible.

45. At that point, Officers Kapusta and Stelter are able to turn Harris over, and get his arms behind his back and Officer Santiago handcuffs Harris behind his back while he remains on the pavement. Supplemental Declaration of Cade (Doc. 73), Exhibit 9 at approximately the 7:56 minute mark through the 8:29 minute mark; Smokowicz Affidavit, Attachment A (Harris Deposition), p.102-105.

RESPONSE: No Dispute.

46. Officers Kapusta and Stelter were unaware of any issue with Harris' arm relating to any surgery until after he had been handcuffed. Supplemental Declaration of Cade (Doc. 73), Exhibit 9 at approximately the 8:33 minute mark through the 8:34 minute mark Smokowicz Affidavit, Attachment A (Harris Deposition), p. 105; Smokowicz Affidavit, Attachment C (Kapusta Deposition), p. 72; Smokowicz Affidavit, Attachment D (Stelter Deposition), pp. 57, 63; Smokowicz Affidavit, Attachment E (Santiago Deposition), p. 141, 143.

RESPONSE: Dispute. On the video, audio can be heard of Harris stating that "you are fucking hurting my arm."

47. Sergeant McCullough does not arrive until after Harris has been detained and handcuffed. Supplemental Declaration of Cade (Doc. 73), Exhibit 9 at approximately the 9:21 minute mark (displaying an officer with sergeant stripes on sleeve walking in front of Santiago's squad) through the 9:24 minute mark.

RESPONSE: No Dispute.

48. Officers Ratzmann and Jacks also do not arrive until after Harris has been detained and handcuffed. Supplemental Declaration of Cade (Doc. 73), Exhibit 9 at approximately the 9:34 minute mark (displaying the arrival of the transport van in front of Santiago's squad) through the 9:46 minute mark (displaying Officers Ratzmann and Jacks running from their van in front of Santiago's squad).

RESPONSE: It is not clear from the video when Ratzmann and Jacks arrive.

49. Officer Santiago first saw Harris car south of North Avenue on Prospect Avenue and he observed it swerving off the line of travel on Prospect Avenue. Smokowicz Affidavit, Attachment E (Santiago deposition), pp. 22-25, 42-43, 92-95.

RESPONSE: Disputed. *See* Responses to Defendants' Additional Proposed Findings of Fact (this document), at Numbers 2-5.

50. Harris denies having any problems in operating the car before he was stopped. Smokowicz Affidavit, Attachment A (Harris deposition), p. 37.

RESPONSE: No Dispute.

51. When Officer Santiago came to the Harris vehicle after the stop, and the window was rolled down, the officer could smell marijuana coming from inside the

vehicle. Smokowicz Affidavit, Attachment E (Santiago deposition), pp. 39, 45, 53, 66.

RESPONSE: No Dispute that Santiago stated this in his deposition.

52. Harris denies using any drugs on the night of the incident. Smokowicz Affidavit, Attachment A (Harris deposition), p. 37-38.

RESPONSE: No Dispute.

53. Medical records that date from around three days following the incident reflect an admission by Harris that he had used drugs about a month before the incident and that he was then using marijuana. Smokowicz Affidavit, Attachment F.

RESPONSE: No Dispute as to what the report specifically stated.

Dated this 7th day of August, 2018.

        **CADE LAW GROUP LLC**

        By: s/Nathaniel Cade, Jr.
          Nathaniel Cade, Jr.
          P.O. Box 170887
          Milwaukee, WI 53217
          (414) 255-3802 (phone)
          (414) 255-3804 (fax)
          nate@cade-law.com

Attorneys for Plaintiff