# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

JIMMY HARRIS,

        Plaintiff,

   v.

CITY OF MILWAUKEE, OFFICER FROILAN
SANTIAGO, OFFICER MARK KAPUSTA,
OFFICER STEVEN STELTER, CHIEF OF
POLICE EDWARD FLYNN, and
SERGEANT WALTER MCCULLOUGH,

        Defendants.

Case No.: 14-CV-1002

Jury Trial Demanded

## PLAINTIFF PRETRIAL REPORT

Plaintiff, Jimmy Harris ("Harris" or "Plaintiff"), by and through his attorneys, Cade

Law Group LLC, pursuant to the Court's Order, provides the following Pretrial Report.

## A.    STATEMENT OF FACTS.

This is a 42 U.S.C. § 1983 civil rights case. Harris was injured in an interaction

with Defendant Milwaukee Police Officer Froilan Santiago, who illegally pulled Harris'

vehicle over on North Avenue in Milwaukee, Wisconsin. Subsequently, Defendant

Milwaukee Police Officers Mark Kapusta and Steven Stelter also assisted in the illegal

arrest of Harris, and his vehicle was searched illegally. Defendant Milwaukee Police

Sgt. Walter McCullough arrived on the scene as the duty sergeant, and allowed Harris

to be taken into custody, despite knowing that the VIN# of Harris' vehicle matched

records of the DOT.

Harris was pulled over by Officer Santiago while he was driving westbound on

North Avenue, just west of Oakland Avenue. Santiago has given two different versions as to where he first saw Harris in his vehicle: Santiago testified that he first saw Harris' car south of North Avenue on Prospect Avenue, and that he saw it swerving off the line of travel on Prospect Avenue. ECF # 94, ¶ 49. However, the defendants (including Santiago) proffer (and Plaintiff accepted) as an undisputed fact that Harris had picked up his fiancée from the hospital near the lakefront on North Avenue, before pulling out onto North Avenue heading west. *Id.*, ¶¶ 4-5. Regardless of which version of this initial fact as to where Santiago initially spotted Harris, Santiago subsequently made the decision to run Harris' license plate number through the Department of Transportation (DOT) database.

Santiago then informed the Milwaukee Police Department dispatcher that he was pulling  over Harris' vehicle because the color of the vehicle did not match the color listed for the license plate on the DOT database. Harris was driving a "gray pearl" colored Chrysler Sebring convertible, which he in fact owned. In fact, the DOT registry listed the car as gray. Santiago, however, claims that the car appeared, to him, to be black under the light conditions at the time— nighttime.

Santiago initiated the stop of Harris by turning on his squad car's flashing lights, which caused video cameras in his squad car to begin recording. The video shows Harris' car and Santiago's squad car proceeding west on North Avenue. Harris promptly pulled over after Santiago turned on his squad lights to initiate the stop.

On the video, Santiago clearly is seen approaching Harris' car and inspecting the dashboard of the vehicle to determine whether the vehicle's vehicle identification number (VIN) matched the VIN connected to the license plate Santiago had run through

the DOT database. Santiago admits that the last four digits of the vehicle's VIN matched the VIN connected to the vehicle's license plate in the DOT registry, and that the make and model of the car matched the database. The only inconsistency that Santiago believed existed was the vehicle's color.

As Santiago approached the driver's window, after confirming the dashboard VIN, Harris asked Santiago to identify the probable cause for the stop. Santiago told Harris that "this is a fucking stolen car." Santiago denies using foul language (and the language used by Santiago cannot be verified, because although the video worked, Santiago's personal microphone, connected to the video, was not working). However, Harris's fiancé, Charita Sims, can confirm that Santiago did use foul language and accused Harris of driving a stolen vehicle.

Regardless, once Santiago told Harris the car was stolen, Harris told Santiago that he had to be wrong. Santiago then told Harris, "I can fucking show you on the squad car computer. Come on, I'll show you. You want to see it?" Before getting out of the car at Santiago's invitation to inspect the squad computer, Harris informed Santiago that he had recently had rotator cuff shoulder surgery eight days earlier and his arm was injured. In fact, On the night of the encounter with Officer Santiago, Harris was under doctor's orders to keep his arm in a sling, but he had removed the sling in order to drive.

Harris exited the car and walked towards the squad car, but before he got past the back end of his own vehicle, Santiago turned him around and started to frisk him. Santiago did not request or receive consent from Harris to initiate the frisk. Santiago told Harris to put his hands up. Harris told Santiago that he could not put his hands up

because of his recent shoulder surgery.

Although the camera in the squad car recorded most of the physical interaction between Harris and Santiago, because Santiago's personal microphone was not on or not working, there is a dispute as to the interactions shown in the video (i.e., the degree to which each party's behavior appears aggressive or argumentative). However, it is clear from the video that Santiago directed Harris to sit on the curb, and after a verbal exchange, Harris complied and sat on the curb. Subsequently, Harris and Santiago clearly enter into a heated exchange of words. Santiago then approached Harris, who was still seated on the curb, several times to place him in handcuffs. Santiago attempts to grab the arm of Harris' injured shoulder. Harris struggled against Santiago, not allowing Santiago to bring Harris' hands behind his back.

Several minutes of physical struggle ensued. Much of the struggle is not visible on the video, as the parties are now on the right hand of the squad car, but Harris clearly is heard shouting that he had just had surgery and that Santiago was ripping his stiches (Although Santiago's personal microphone was not recording, the microphone inside the squad car was able to pick up loud noises, such as Harris' shouting that Santiago was hurting him).

The parties agree that the struggle ended when Santiago bear hugged Harris, and slammed him into the squad car. Harris brought his right hand back but could not bring his left hand back, and Santiago tried to force them both back. Santiago then hit Harris in the back on the neck and brought him to the sidewalk. Santiago held Harris on the sidewalk by kneeling on him until Officers Stelter and Kapusta arrived. Kapusta and Stelter turned Harris over and held his arms behind his back while Santiago

handcuffed him. The parties dispute whether Kapusta and Stelter were aware that Harris had an injury to his arm. Santiago did not inform the department dispatcher, or Officers Kapusta and Stelter, that Harris had an injured arm.

After Harris was placed into handcuffs, but before he was taken from the scene, Sergeant McCullough arrived, as did some other officers who are not parties to this case. Harris subsequently is led away to an MPD van. Then, Santiago and the other officers began searching Harris' vehicle after Harris had been led away. Harris did not grant any of the officers permission to search his vehicle.

While the search of the vehicle was occurring, the squad video camera records Santiago and another officer inside or just to the side of the vehicle having the following exchange:

> Q: You got the plate?
> Santiago: Yeah.
> Q: There is the VIN on the car. Does it match that?
> Santiago: Yeah.

Despite the knowledge that the VIN matched the DOT database, Sgt. McCullough continued to allow the officers present to arrest Harris and search his vehicle.

Santiago's decision to pull over Harris because the color of his vehicle did not match what he perceived it to be violated Wisconsin law. More specifically, Wisconsin Statute § 349.02(2)(c) provides that

> a law enforcement officer may not stop a vehicle solely because the vehicle's color differs from the color stated in the application for registration of that vehicle. This paragraph does not limit the authority of a law enforcement officer to issue a citation for improper registration of a vehicle whose color differs from the color stated in the application for registration of the vehicle, if the difference is observed in the course of a stop or inspection made for other

purposes.

Santiago admitted in his deposition that he has on several occasions pulled over vehicles where the color did not match the DOT database. Officers Stelter and Jacks also testified that they have pulled over vehicles where the color did not match the database, though it is unclear from their testimony whether the color mismatch was the sole reason for the stop. Chief of Police Edward Flynn stated at his deposition that he believed officers had a legal right to pull over vehicles where the color of the vehicle did not match the database because it creates a reasonable suspicion. The Milwaukee Police Department does not have a policy with regards to vehicles whose color does not match DOT records, and Chief Flynn has testified that he does not believe the he needed to issue such a policy. Officer Stelter has indicated that he was not trained on how to handle a situation where a vehicle's color did not match the database other than by initiating a stop and checking the VIN. Officer Kapusta testified that he does not recall if he ever received such training.

**B.    STATEMENT OF ISSUES.**

The issues for a jury to determine in this matter are:

1.    Did the Defendants each, individually, violate Harris' constitutional rights by pulling his vehicle over, arresting him, injuring him and/or searching his vehicle?

2.    If the answer to Question 1 is yes, what amount of compensatory damages, if any, is Harris entitled to recover against each defendant?

3.    If the answer to Question 1 is yes, is Harris entitled to punitive damages against any of the defendants?

4. If the answer to Question 3 is yes, what amount of punitive damages is Harris entitled to recover?

**C.    PLAINTIFF'S WITNESSES.**

1. Jimmy Harris – the plaintiff. He will testify as to his interaction with the defendants, and his subsequent injuries. He may be contacted through Plaintiff's counsel.

2. Charita Sims – Is Harris' fiancée and was present with Harris when Santiago illegally pulled over the vehicle. She will testify about the statements Santiago made to Harris and her observations. She also will testify about Harris' injuries and her care and treatment of Harris. She may be contacted through Plaintiff's counsel.

3. Froilan Santiago – Is a named defendant and the person who illegally pulled Harris' vehicle over, and subsequently assaulted Harris. He will testify as to his actions and his breach of Harris' constitutional rights. He may be contacted through Defendants' counsel.

4. Walter McCullough – is a named defendant who was the Sergeant on duty at the time Harris was assaulted and illegally arrested. He will testify as to his actions and his breach of Harris' constitutional rights. He may be contacted through Defendants' counsel.

5. Mark Kapusta – is a named defendant and one of the officers who illegally arrested Harris as well as caused injuries to him. He will testify as to his actions and his breach of Harris' constitutional rights. He may be contacted through Defendants' counsel.

6.     Steven Stelter – is a named defendant and one of the officers who illegally arrested Harris as well as caused injuries to him. He will testify as to his actions and his breach of Harris' constitutional rights. He may be contacted through Defendants' counsel.

7.     Edward Flynn – is a named defendant, and previously the Milwaukee Police Department Chief of Police. He will testify as to his actions and his breach of Harris' constitutional rights. He may be contacted through Defendants' counsel.

8.     Crystal Jacks – is a Milwaukee Police Officer who was present at the time of Mr. Harris' arrest, and can testify as to the improper police procedures used by Officer Santiago when he had Mr. Harris exit his vehicle. She may be contacted through Defendants' counsel.

9.     Eric Ratzmann – is a Milwaukee Police Officer who was present at the time of Mr. Harris' arrest, and can testify as to the improper police procedures used by Officer Santiago when he had Mr. Harris exit his vehicle. He may be contacted through Defendants' counsel.

10.     Witnesses to certify the ambulance, billing and medical records pertaining to Mr. Harris, unless stipulated to by the Defense.

11.     Harris reserves the right to call any of the witnesses identified by Defendants and to amend this list based on the evidence, as presented by Defendants.

12.     Harris also reserves the right to call witnesses to provide rebuttal testimony.

## D. EXPERT WITNESSES.

1. Brian Landers – Landers is Harris' police practices expert and will provide expert testimony that the actions of Defendants violated Harris' constitutional rights and were not consistent with standard police practices. Landers previously was employed by the Wisconsin Dells Police Department. His report is attached to this pretrial report. He may be contacted through Plaintiff's counsel.

2. Steven Grindel - Dr. Grindel is Harris' medical expert and will testify consistent with his report as to the injuries that Harris suffered as a result of his assault by Santiago, Kapusta and Stelter. He also will testify as to the subsequent medical damages that Harris' suffered and the recent surgeries that Harris has undergone as the result of the assault and subsequent damage to Harris' shoulder. His report is attached to this pretrial report. He may be contacted through Plaintiff's counsel.

3. David Kornreich – Dr. Kornreich is a medical expert and will testify consistent with his evaluative report. He performed the original surgery on Mr. Harris' rotator cuff only a few days before Defendants injured him. He can testify as to the condition that Mr. Harris was in prior to being permanently injured. His evaluative report is attached to this pretrial report. He may be contacted through Plaintiff's counsel.

## E. DEFENDANT'S LIST OF EXHIBITS.

**Exhibits Used in Depositions:**

1. Detailed History of Police Call

2. 10/27/14 Memorandum

3. 3/1/12 Memorandum

4. Investigation Employee Case File History

9

5.     Training Acknowledgments Report

6.     12/15/14 Memorandum

7.     Memorandum dated 3/2/12, from Lieutenant David Salazar
       to Captain Diana Rowe

8.     Memo from Detective Carloni to Lieutenant Salazar

9.     Documents from employee file

10.    Journal Sentinel article

11.    Roster dated November 19, 2010

12.    Recorded interview summary

13.    November 14th of 2007 letter

14.    Memo dated November 14, 2007

15.    Transcript of basic law enforcement officer course completion

16.    3/1/12 MPD Memorandum

17.    Walker's Point Association

18.    News article 8/30/17

19.    Federal subpoena for Walter McCullough

20.    Notice of deposition for Walter McCullough

21.    February 1, 2012, interview notes

22.    Plaintiff's Response to Defendants' First Set of 8 Interrogatories
       and Requests to Produce

23.    DOT card, vehicle description

24.    1999 Chrysler Sebring Colors

25.    Booking photo

26.    Pre-Operative History

27.   Clinical Profile History

28.   Citizen Complaint Form

**Other Exhibits/Discovery:**

29.   Video tape of traffic stop of Jimmy Harris by Froilan Santiago

30.   Wisconsin Title & License Plate Application (01/19/2016)

31.   Chrysler Sebring (Certificate of Title)

32.   Probable Cause Statement and Judicial Determination, dated Nov. 19, 2012 and signed by Officer Santiago

33.   Jimmy Harris Citizen Complaint Form, dated July 24, 2012

34.   Expert Report of Brian Landers

35.   Defendant City of Milwaukee's Response to Plaintiff's First Set of Requests to Admit (dated January 26, 2017)

36.   City of Milwaukee's Responses to Plaintiff's first Set of Interrogatories and Requests to Produce (dated February 13, 2017)

37.   Defendants' Supplementary Responses to Plaintiff's First Request to Produce (dated March 2, 2017)

38.   City of Milwaukee and Officer Froilan Santiago's response to Jimmy Harris' Second Set of Interrogatories and Requests to Produce Documents (dated February 15, 2018).

39.   Defendants' Response to Request for Production of Documents No. 7 (Answer to Interrogatory No. 8-Officer training course completion) (dated March 22, 2017)

40.   Defendants' Response to Request for Production of Documents No. 1

(Answer to Interrogatory No. 13) (dated March 22, 2017)

41.     Documents produced by Attorney Jan Smokowicz from City of Milwaukee's file regarding Jimmy Harris file - complaint about Santiago Froilan (produced June 21, 2017)

42.     Milwaukee Police Department Code of Conduct

43.     Milwaukee Police Department Standard Operating Procedure 22 – Arrest Authority (Effective 12/19/2008)

44.     Milwaukee Police Department Incident Report (Incident No. 103230121)(dated Nov. 19, 2010).

45.     Audio Interview of Jimmy Harris (2010.11.29)

46.     Audio Interview of PO Froilan Santiago (2012.02.15)

47.     Audio Interview of PO Walter McCullough (2012.03.22)

48.     Audio and Video Interview of PO Eric Ratzmann (2012.01.24)

49.     Audio Interview of PO Mark Kapusta (2012.02.16)

50.     Audio Interview of PO Steven Stelter (2012.02.16)

51.     Audio and Video Interview of PO Crystal Jacks (2012.02.01)

52.     Interview of Walter McCullough (01/30/12)

53.     Interview of Mark Kapusta (01/24/12)

54.     Interview of Eric Ratzmann (1/24/12)

55.     Interview of Crystal jacks (0201/12)

56.     Interview of Jimmy Harris (01/18/2012)

57.     Incident report #102560219, pertaining to death of James Perry, which identifies Froilan Santiago and Crystal Jacks as officers involved (for impeachment

purposes).

58.     Jan. 29, 2014 deposition transcript of Froilan Santiago in the case of Estate of James Perry v. Wenzel (E.D. Wis. Case # 12-cv-664)(for impeachment purposes).

**Photos of Harris – Post-surgeries**

59.     Photo of left arm pit scarring following surgery (6/7/18)

60.     Photo of left shoulder scarring (6/7/18)

61.     Photo of permanent scarring of the open wound following surgery (6/7/18)

62.     Photo of open wound after staples removed (10/21/2019)

63.     Photo of open wound after surgery (10/24/2016)

64.     Photo of open wound after staples removed (10/26/2016)

65.     Photo of open wound after staples removed (10/28/2016)

66.     Jimmy Harris Photo (staples)

67.     Jimmy Harris Photo (Arm pit-staples-blood blister)

68.     Jimmy Harris Photo (shoulder-staples II)

69.     Jimmy Harris Photo (shoulder-staples)

70.     Jimmy Harris Photo (left side of back-staples)

71.     Jimmy Harris Photo (back side of neck-staples)

72.     Jimmy Harris Photo (front of neck-throat)

**Medical and Patient Billing Records:**

73.     Dr. Steven Grindel Narrative Report (dated July 18, 2017)

74.     Dr. David Kornreich Evaluative Report (dated September 26, 2017)

75.     Ambulance Report and Billing Statement (Bell Ambulance Service)

76.     Medical records from Froedtert & MCW (2013.03.18 - 2016.09.18)

77. Wheaton Franciscan Healthcare - St. Joseph's Campus (certified medical records 03.23.17 thru 07.13.17)(dated September 14, 2017)

78. Wheaton Franciscan-St. Joseph's Hospital (certified medical records 2010.05.05 - 2016.08.19).

79. Columbia St. Mary's (medical records)(Nov. 11, 2014)

80. Medical records from Mayfair Injury and Spine Center

81. Froedtert and Medical College medical records (April 28, 2011 – November 3, 2016)

82. Wheaton Franciscan Healthcare (billing statements 2010.11.21 - 2016.08.19)

83. Wheaton Franciscan Healthcare (billing statements from 03.23.17 thru 07.13.17)

84. Froedtert Hospital (certified billing statements)(dated November 9, 2016)

85. Columbia St. Mary's (billing statements)(Nov. 15, 2016)

86. Medical College of Wisconsin (billing statements)(dated November 19, 2010 through Nov. 7, 2016)

87. Itemization of Special Damages (as August 15, 2018)

88. Plaintiff reserves the right to use any exhibit identified by Defendant(s).

89. Plaintiff reserves the right to use any document or medical record for rebuttal.

90. Plaintiff reserves the right to use demonstrative exhibits.

**F.     DESIGNATION OF DEPOSITIONS OR PORTIONS OR TRANSCRIPTS TO BE READ OR PLAYED AT TRIAL.**

Harris may play the videotaped deposition transcript or read-in parts of the deposition transcript of Chief Ed Flynn if he is not available to testify at trial.

**G.     TIME ESTIMATE.**

Harris believes that the case will take three days to try, including voir dire and jury deliberations.

**H.     VOIR DIRE PROPOSED QUESTIONS.**

1.     Name, age, occupation?

2.     Married?

    a.     If yes, name, age and occupation of spouse?

3.     Any family members or relatives work in or for law enforcement?

    a.     How involved?

4.     Any family members or relatives work in or for the military?

    a.     How involved?

5.     Have you, your spouse or any member of your family ever experienced any problem (s) with police officers, such as an arrest?

    a.     If yes, please describe experience?

6.     Have you, your spouse or anyone in your family ever filed a claim for a personal injury or accident?

    a.     If yes, please explain the claim or lawsuit that was filed?

    b.     If yes, how was the claim or lawsuit resolved?

    c.     Are you satisfied with how the claim or lawsuit was resolved?

7. Have you, your spouse or anyone in your family ever been sued in a court of law?

      a. If yes, please explain the claim or lawsuit that was filed?

      b. If yes, how was the claim or lawsuit resolved?

      c. Are you satisfied with how the claim or lawsuit was resolved?

8. Do you know anyone who has ever filed a claim or lawsuit against law enforcement for injuries or a false arrest?

      a. If yes, please explain the claim or lawsuit that was filed?

      b. If yes, how was the claim or lawsuit resolved?

**I.    PROPOSED STIPULATIONS**

1. Santiago pulled over Harris' car based on its color not matching DOT records

2. State Law does not allow a vehicle to be pulled over solely because the vehicle color does not match state records.

3. Santiago did not tell dispatch, in calling for backup, that Harris had an injured shoulder due to rotator cuff surgery.

**J.    PROPOSED JURY INSTRUCTIONS (next page)**

## FUNCTIONS OF THE COURT AND THE JURY

Members of the jury, you have seen and heard all the evidence and arguments of the attorneys. Now I will instruct you on the law.

You have two duties as a jury. Your first duty is to decide the facts from the evidence in the case. This is your job, and yours alone.

Your second duty is to apply the law that I give you to the facts. You must follow these instructions, even if you disagree with them. Each of the instructions is important, and you must follow all of them.

Perform these duties fairly and impartially. Do not allow sympathy, prejudice, fear or public opinion to influence you.

Nothing I say now, and nothing I said or did during the trial, is meant to indicate any opinion on my part about what the facts are or about what your verdict should be.

Plaintiff's Proposed Jury Instruction No. 1.
Source:  Seventh Circuit Pattern Civil Jury Instruction 1.01
_____ Given
_____ Rejected
_____ Withdrawn
_____ Objected to

17

**ALL LITIGANTS EQUAL BEFORE THE LAW**

In this case, Plaintiff Jimmy Harris is a private citizen. Defendant City of Milwaukee is a municipal corporation. Defendants Froilan Santiago, Ed Flynn, Mark Kapusta, Steven Stelter, and Walter McCullough are members of the City of Milwaukee Police Department. All parties are equal before the law. Each of the parties in this case is entitled to the same fair consideration. You are thus not to afford any more credibility to statements made by witnesses or parties because they are police officers, and you are not to afford any less credibility to statements made by witnesses or parties because they are not police officers.

Plaintiff's Proposed Jury Instruction No. 2
Source: Adapted from Seventh Circuit Pattern Civil Jury Instruction 1.03
_____ Given
_____ Rejected
_____ Withdrawn
_____ Objected to

**EVIDENCE**

The evidence consists of the testimony of the witnesses, the exhibits admitted in evidence, and stipulations.

A stipulation is an agreement between both sides that [certain facts are true or that a person would have given certain testimony.

In addition, I have taken judicial notice of certain facts. You must accept those facts as proved.

Plaintiff's Proposed Jury Instruction No. 3
Source: Adapted from Seventh Circuit Pattern Civil Jury Instruction 1.04
_____ Given
_____ Rejected
_____ Withdrawn
_____ Objected to

**DEPOSITION TESTIMONY**

During the trial, certain testimony was presented to you by [the reading of a deposition/depositions] [and video]. You should give this testimony the same consideration you would give it had the witness[es] appeared and testified here in court.

Plaintiff's Proposed Jury Instruction No. 4
Source: Adapted from Seventh Circuit Pattern Civil Jury Instruction 1.05
_____ Given
_____ Rejected
_____ Withdrawn
_____ Objected to

## WHAT IS NOT EVIDENCE

Certain things are not to be considered as evidence. I will list them for you: First, if I told you to disregard any testimony or exhibits or struck any testimony or exhibits from the record, such testimony or exhibits are not evidence and must not be considered.

Second, anything that you may have seen or heard outside the courtroom is not evidence and must be entirely disregarded. This includes any press, radio, Internet or television reports you may have seen or heard. Such reports are not evidence and your verdict must not be influenced in any way by such publicity.

Third, questions and objections or comments by the lawyers are not evidence. Lawyers have a duty to object when they believe a question is improper. You should not be influenced by any objection, and you should not infer from my rulings that I have any view as to how you should decide the case.

Fourth, the lawyers' opening statements and closing arguments to you are not evidence. Their purpose is to discuss the issues and the evidence. If the evidence as you remember it differs from what the lawyers said, your memory is what counts.

Plaintiff's Proposed Jury Instruction No. 5
Source: Adapted from Seventh Circuit Pattern Civil Jury Instruction 1.06
_____ Given
_____ Rejected
_____ Withdrawn
_____ Objected to

**NOTE-TAKING**

Any notes you have taken during this trial are only aids to your memory. The notes are not evidence. If you have not taken notes, you should rely on your independent recollection of the evidence and not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollections or impressions of each juror about the testimony

Plaintiff's Proposed Jury Instruction No. 6
Source: Adapted from Seventh Circuit Pattern Civil Jury Instruction 1.07
_____ Given
_____ Rejected
_____ Withdrawn
_____ Objected to

**CONSIDERATION OF ALL EVIDENCE REGARDLESS OF WHO PRODUCED**

In determining whether any fact has been proved, you should consider all of the evidence bearing on the question regardless of who introduced it.

Plaintiff's Proposed Jury Instruction No. 7
Source: Adapted from Seventh Circuit Pattern Civil Jury Instruction 1.08
_____ Given
_____ Rejected
_____ Withdrawn
_____ Objected to

**LIMITED PURPOSE OF EVIDENCE**

You will recall that during the course of this trial I instructed you that I admitted certain evidence for a limited purpose. You must consider this evidence only for the limited purpose for which it was admitted.

Plaintiff's Proposed Jury Instruction No. 8
Source: Adapted from Seventh Circuit Pattern Civil Jury Instruction 1.09
_____ Given
_____ Rejected
_____ Withdrawn
_____ Objected to

**WEIGHING THE EVIDENCE**

You should use common sense in weighing the evidence and consider the evidence in light of your own observations in life. In our lives, we often look at one fact and conclude from it that another fact exists. In law we call this "inference." A jury is allowed to make reasonable inferences. Any inference you make must be reasonable and must be based on the evidence in the case.

Plaintiff's Proposed Jury Instruction No. 9
Source: Adapted from Seventh Circuit Pattern Civil Jury Instruction 1.11
_____ Given
_____ Rejected
_____ Withdrawn
_____ Objected to

Case 2:14-cv-01002-LA   Filed 07/24/19   Page 25 of 61   Document 110

**DEFINITION OF "DIRECT" AND "CIRCUMSTANTIAL" EVIDENCE**

You may have heard the phrases "direct evidence" and "circumstantial evidence." Direct evidence is proof that does not require an inference, such as the testimony of someone who claims to have personal knowledge of a fact. Circumstantial evidence is proof of a fact, or a series of facts, that tends to show that some other fact is true. As an example, direct evidence that it is raining is testimony from a witness who says, "I was outside a minute ago and I saw it raining." Circumstantial evidence that it is raining is the observation of someone entering a room carrying a wet umbrella. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. You should decide how much weight to give to any evidence. In reaching your verdict, you should consider all the evidence in the case, including the circumstantial evidence

Plaintiff's Proposed Jury Instruction No. 10
Source: Adapted from Seventh Circuit Pattern Civil Jury Instruction 1.12
_____ Given
_____ Rejected
_____ Withdrawn
_____ Objected to

## TESTIMONY OF WITNESSES (DECIDING WHAT TO BELIEVE)

You must decide whether the testimony of each of the witnesses is truthful and accurate, in part, in whole, or not at all. You also must decide what weight, if any, you give to the testimony of each witness.

In evaluating the testimony of any witness, including any party to the case, you may consider, among other things:

- the ability and opportunity the witness had to see, hear, or know the things that the witness testified about;

- the witness's memory;

- any interest, bias, or prejudice the witness may have;

- the witness's intelligence; - the manner of the witness while testifying;

- and the reasonableness of the witness's testimony in light of all the evidence in the case.

Plaintiff's Proposed Jury Instruction No. 11
Source: Adapted from Seventh Circuit Pattern Civil Jury Instruction 1.13
_____ Given
_____ Rejected
_____ Withdrawn
_____ Objected to

Case 2:14-cv-01002-LA   Filed 07/24/19   Page 27 of 61   Document 110

**PRIOR INCONSISTENT STATEMENTS OR ACTS**

You may consider statements given by a Party or Witness under oath before trial as evidence of the truth of what he said in the earlier statements, as well as in deciding what weight to give his testimony.

With respect to other witnesses, the law is different. If you decide that, before the trial, one of these witnesses made a statement not under oath or acted in a manner, that is inconsistent with his testimony here in court, you may consider the earlier statement or conduct only in deciding whether his testimony here in court was true and what weight to give to his testimony here in court.

In considering a prior inconsistent statement[s] [or conduct], you should consider whether it was simply an innocent error or an intentional falsehood and whether it concerns an important fact or an unimportant detail.

Plaintiff's Proposed Jury Instruction No. 12
Source: Adapted from Seventh Circuit Pattern Civil Jury Instruction 1.14
_____ Given
_____ Rejected
_____ Withdrawn
_____ Objected to

**NUMBER OF WITNESSES**

You may find the testimony of one witness or a few witnesses more persuasive than the testimony of a larger number. You need not accept the testimony of the larger number of witnesses.

Plaintiff's Proposed Jury Instruction No. 13
Source: Adapted from Seventh Circuit Pattern Civil Jury Instruction 1.17
_____ Given
_____ Rejected
_____ Withdrawn
_____ Objected to

**ABSENCE OF EVIDENCE**

The law does not require any party to call as a witness every person who might have knowledge of the facts related to this trial. Similarly, the law does not require any party to present as exhibits all papers and things mentioned during this trial.

Plaintiff's Proposed Jury Instruction No. 14
Source: Adapted from Seventh Circuit Pattern Civil Jury Instruction 1.18
_____ Given
_____ Rejected
_____ Withdrawn
_____ Objected to

**ADVERSE INFERENCE FROM MISSING WITNESS**

[Witness] was mentioned at trial but did not testify. You may, but are not required to, assume that [Witness's] testimony would have been unfavorable to Defendant.

Plaintiff's Proposed Jury Instruction No. 15
Source: Adapted from Seventh Circuit Pattern Civil Jury Instruction 1.19
_____ Given
_____ Rejected
_____ Withdrawn
_____ Objected to

**EXPERT WITNESSES**

You have heard witnesses give opinions about matters requiring special knowledge or skill. You should judge this testimony in the same way that you judge the testimony of any other witness. The fact that such person has given an opinion does not mean that you are required to accept it. Give the testimony whatever weight you think it deserves, considering the reasons given for the opinion, the witness's qualifications, and all of the other evidence in the case.

Plaintiff's Proposed Jury Instruction No. 16
Source: Adapted from Seventh Circuit Pattern Civil Jury Instruction 1.21
_____ Given
_____ Rejected
_____ Withdrawn
_____ Objected to

**DEMONSTRATIVE EXHIBITS**

Certain demonstrative exhibits have been shown to you. Those exhibits are used for convenience and to help explain the facts of the case. They are not themselves evidence or proof of any facts.

Plaintiff's Proposed Jury Instruction No. 17
Source: Adapted from Seventh Circuit Pattern Civil Jury Instruction 1.24
_____ Given
_____ Rejected
_____ Withdrawn
_____ Objected to

**MULTIPLE CLAIMS; MULTIPLE DEFENDANTS**

You must give separate consideration to each claim and each party in this case. Although there are 6 defendants, it does not follow that if one is liable, any of the others is also liable. If evidence was admitted only as to fewer than all defendants or all claims: In considering a claim against a defendant, you must not consider evidence admitted only against other defendants or only as to other claims.

Plaintiff's Proposed Jury Instruction No. 18
Source: Adapted from Seventh Circuit Pattern Civil Jury Instruction 1.25
_____ Given
_____ Rejected
_____ Withdrawn
_____ Objected to

**BURDEN OF PROOF**

When I say a particular party must prove something by "a preponderance of the evidence," or when I use the expression "if you find," or "if you decide," this is what I mean: When you have considered all the evidence in the case, you must be persuaded that it is more probably true than not true.

Plaintiff's Proposed Jury Instruction No. 19
Source: Adapted from Seventh Circuit Pattern Civil Jury Instruction 1.27
_____ Given
_____ Rejected
_____ Withdrawn
_____ Objected to

**NO NEED TO CONSIDER DAMAGES INSTRUCTION**

      If you decide for the defendant[s] on the question of liability, then you should not consider the question of damages.

Plaintiff's Proposed Jury Instruction No. 20
Source: Adapted from Seventh Circuit Pattern Civil Jury Instruction 1.31
_____ Given
_____ Rejected
_____ Withdrawn
_____ Objected to

**SELECTION OF PRESIDING JUROR; GENERAL VERDICT**

Upon retiring to the jury room, you must select a presiding juror. The presiding juror will preside over your deliberations and will be your representative here in court.

Forms of verdict have been prepared for you. [Forms of verdict read.] (Take these forms to the jury room, and when you have reached unanimous agreement on the verdict, your presiding juror will fill in, date, and sign the appropriate form.) OR (Take these forms to the jury room, and when you have reached unanimous agreement on the verdict, your presiding juror will fill in and date the appropriate form, and all of you will sign it.)

Plaintiff's Proposed Jury Instruction No. 21
Source: Adapted from Seventh Circuit Pattern Civil Jury Instruction 1.32
_____ Given
_____ Rejected
_____ Withdrawn
_____ Objected to

## DISAGREEMENT AMONG JURORS

The verdict must represent the considered judgment of each juror. Your verdict, whether for or against the parties, must be unanimous. You should make every reasonable effort to reach a verdict. In doing so, you should consult with one another, express your own views, and listen to the opinions of your fellow jurors. Discuss your differences with an open mind. Do not hesitate to reexamine your own views and change your opinion if you come to believe it is wrong. But you should not surrender your honest beliefs about the weight or effect of evidence solely because of the opinions of other jurors or for the purpose of returning a unanimous verdict. All of you should give fair and equal consideration to all the evidence and deliberate with the goal of reaching an agreement that is consistent with the individual judgment of each juror. You are impartial judges of the facts.

Plaintiff's Proposed Jury Instruction No. 22
Source: Adapted from Seventh Circuit Pattern Civil Jury Instruction 1.34
_____ Given
_____ Rejected
_____ Withdrawn
_____ Objected to

## DEPOSITION AS SUBSTANTIVE EVIDENCE

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded. The deposition of [Witness], which was taken on [date], is about to be presented to you. Deposition testimony is entitled to the same consideration and is to be judged, insofar as possible, in the same way as if the witness had been present to testify. [Do not place any significance on the behavior or tone of voice of any person reading the questions or answers.]

Plaintiff's Proposed Jury Instruction No. 23
Source: Adapted from Seventh Circuit Pattern Civil Jury Instruction 2.08
_____ Given
_____ Rejected
_____ Withdrawn
_____ Objected to

## USE OF INTERROGATORIES
## (TO BE USED ONLY WHEN INTERROGATORIES ARE READ WITHOUT
## ADMISSION INTO EVIDENCE)

Evidence **may** be presented to you in the form of written answers of one of the parties to written interrogatories submitted by the other side. These answers were given in writing and under oath before this trial in response to written questions. You must give the answers the same consideration as if the answers were made from the witness stand.

Plaintiff's Proposed Jury Instruction No. 24
Source: Adapted from Seventh Circuit Pattern Civil Jury Instruction 2.09
_____ Given
_____ Rejected
_____ Withdrawn
_____ Objected to

**JUDGE'S COMMENTS TO LAWYER**

I have a duty to caution or warn an attorney who does something that I believe is not in keeping with the rules of evidence or procedure. You are not to draw any inference against the side whom I may caution or warn during the trial.

Plaintiff's Proposed Jury Instruction No. 25
Source: Adapted from Seventh Circuit Pattern Civil Jury Instruction 2.14
_____ Given
_____ Rejected
_____ Withdrawn
_____ Objected to

41

**GENERAL: REQUIREMENT OF PERSONAL INVOLVEMENT**

      Plaintiff must prove by a preponderance of the evidence that **each of the named** defendant**s were** personally involved in the conduct that Plaintiff complains about. You may not hold **an** individual defendant liable for what others did or did not do.

Plaintiff's Proposed Jury Instruction No. 26
Source: Adapted from Seventh Circuit Pattern Civil Jury Instruction 7.02
_____ Given
_____ Rejected
_____ Withdrawn
_____ Objected to

**GENERAL: "UNDER COLOR OF LAW"**

One of the things Jimmy Harris must prove is that **<u>each</u>** Defendant acted "under color of law."

(a) Public employee defendant

A person who is employed by the government acts "under color of law" if he uses or misuses authority that he has because of his official position. A person may act under color of law even if he is violating a state law or policy. You may find that Defendant acted under color of law even if he was acting outside his authority if he represented himself as having that authority or if he otherwise used his position to accomplish the act.

Plaintiff's Proposed Jury Instruction No. 27
Source: Adapted from Seventh Circuit Pattern Civil Jury Instruction 7.03
_____ Given
_____ Rejected
_____ Withdrawn
_____ Objected to

## LIMITING INSTRUCTION CONCERNING EVIDENCE OF STATUTES, ADMINISTRATIVE RULES, REGULATIONS, AND POLICIES

You have heard evidence about whether **each** Defendant's conduct violated a state statute. You may consider this evidence in your deliberations as to the claims of an improper stop, excessive force or false arrest But remember that the issue is whether **each named** Defendant improperly stopped Jimmy Harris, falsely arrested Jimmy Harris or used excessive force on. Jimmy Harris, not whether a statute might have been violated.

Plaintiff's Proposed Jury Instruction No. 28
Source: Adapted from Seventh Circuit Pattern Civil Jury Instruction 7.04
_____ Given
_____ Rejected
_____ Withdrawn
_____ Objected to

## FOURTH AMENDMENT: TERRY (INVESTIGATORY) STOP

Plaintiff claims that Defendant seized him without reasonable suspicion. To succeed on this claim, Plaintiff must prove each of the following 3 things by a preponderance of the evidence:

1. Defendant seized Plaintiff. A person is seized if his movement is restrained by the use of physical force or by a show of authority that the person obeys. A show of authority occurs when a reasonable person would understand that he is not free to end the encounter.

2. Defendant did not have a reasonable suspicion that Plaintiff had committed or was committing a crime. Reasonable suspicion must be based on specific facts known to the officer, together with the reasonable inferences from those facts. A hunch does not constitute reasonable suspicion.

You may have heard the phrase, "probable cause." Probable cause is not required for the type of seizure you are considering. You should consider only whether there was reasonable suspicion for the seizure as I have defined it in this instruction.

3. Defendant acted under color of law.

If you find that Plaintiff has proved each of these things by a preponderance of the evidence, then you must decide for Plaintiff, and go on to consider the question of damages.

If, on the other hand, you find that Plaintiff has failed to prove any one of these things by a preponderance of the evidence, then you must decide for Defendant, and you will not consider the question of damages.

Plaintiff's Proposed Jury Instruction No. 29
Source: Adapted from Seventh Circuit Pattern Civil Jury Instruction 7.06
_____ Given
_____ Rejected
_____ Withdrawn
_____ Objected to

## FOURTH AMENDMENT: FALSE ARREST – ELEMENTS

Plaintiff claims that Defendants Santiago, Kapusta and Stelter falsely arrested him. To succeed on this claim, Plaintiff must prove each of the following (number of elements) things by a preponderance of the evidence:

1. Defendants arrested Plaintiff.

2. Defendants did not have probable cause to arrest Plaintiff.

3. Defendants acted under color of law.

If you find that Plaintiff has proved each of these things by a preponderance of the evidence, then you must decide for Plaintiff, and go on to consider the question of damages.

If, on the other hand, you find that Plaintiff has failed to prove any one of these things by a preponderance of the evidence, then you must decide for Defendants, and you will not consider the question of damages.

Plaintiff's Proposed Jury Instruction No. 30
Source: Adapted from Seventh Circuit Pattern Civil Jury Instruction 7.07
_____ Given
_____ Rejected
_____ Withdrawn
_____ Objected to

**FOURTH AMENDMENT: FALSE ARREST - DEFINITION OF "PROBABLE CAUSE"**

Probable cause exists for an arrest exists if, at the moment the arrest was made, a reasonable person in Defendant's position would have believed that Plaintiff was committing a crime. In making this decision, you should consider what each Defendant knew and the reasonably trustworthy information each Defendant had received.

Probable cause requires more than just a suspicion. But it does not need to be based on evidence that would be sufficient to support a conviction, or even a showing that Defendant's belief was probably right.

It is not necessary that Defendant had probable cause to arrest Plaintiff for theft of a vehicle, so long as Defendant had probable cause to arrest him for some criminal offense.

Plaintiff's Proposed Jury Instruction No. 31
Source: Adapted from Seventh Circuit Pattern Civil Jury Instruction 7.08
_____ Given
_____ Rejected
_____ Withdrawn
_____ Objected to

**FOURTH AMENDMENT AND FOURTEENTH AMENDMENT : EXCESSIVE FORCE
AGAINST ARRESTEE OR DETAINEE- ELEMENTS**

Jimmy Harris claims that Defendants Froilan Santiago, Mark Kapusta or Steven Stelter used excessive force against him. To succeed on this claim, Jimmy Harris must prove each of the following thing by a preponderance of the evidence:

1. Froilan Santiago, Mark Kapusta or Steven Stelter used unreasonable force against Jimmy Harris.

2. Defendant acted under color of law.

If you find that Jimmy Harris has proved **this element** by a preponderance of the evidence, then you must decide for Jimmy Harris, and go on to consider the question of damages. If on the other hand, you find that Jimmy Harris did not prove **this element** by a preponderance of the evidence <u>against any of the Defendants</u>, then you must decide for Defendants, and you will not consider the question of damages.

Plaintiff's Proposed Jury Instruction No. 32
Source: Adapted from Seventh Circuit Pattern Civil Jury Instruction 7.09
_____ Given
_____ Rejected
_____ Withdrawn
_____ Objected to

48

## FOURTH AMENDMENT: EXCESSIVE FORCE AGAINST ARRESTEE – DEFINITION OF "UNREASONABLE"

In performing his job, an officer can use force that is reasonably necessary under the circumstances.

In deciding whether the Defendants Froilan Santiago, Mark Kapusta or Steven Stelter used unreasonable force, you should consider all of the circumstances. Circumstances you may consider include the need for the use of force, the relationship between the need for the use of force and the amount of force used, the extent of the plaintiff's injury, any efforts made by the defendant to temper or limit the amount of force, the severity of the crime at issue, the threat reasonably perceived by the officer(s), and whether the plaintiff was actively resisting arrest or was attempting to evade arrest by fleeing, but you are not limited to these circumstances.

~~An officer may use deadly force when a reasonable officer, under the same circumstances, would believe that the suspect's actions placed him or others in the immediate vicinity in imminent danger of death or serious bodily harm. [It is not necessary that this danger actually existed.] [An officer is not required to use all practical alternatives to avoid a situation where deadly force is justified.]]~~

You must decide whether **each of the** Defendant's use of force was unreasonable from the perspective of a reasonable officer facing the same circumstances that **each particular** Defendant faced. You must make this decision based on what the officer knew at the time of the use of force, not based on matters learned after the use of force. In deciding whether **each** Defendant's use of force was unreasonable, you must not consider whether **that** Defendant's intentions were good or bad.

Plaintiff's Proposed Jury Instruction No. 33
Source: Adapted from Seventh Circuit Pattern Civil Jury Instruction 7.10
_____ Given
_____ Rejected
_____ Withdrawn
_____ Objected to

**CLAIM FOR FAILURE OF "BYSTANDER" OFFICER TO INTERVENE – ELEMENTS**

To succeed on his failure to intervene claim against Mark Kapusta, Steven Stelter or Walter McCullough, Jimmy Harris must prove each of the following (number of elements) things by a preponderance of the evidence:

1. Officer Santiago falsely arrested and used excessive force against Jimmy Harris.

2. Mark Kapusta, Steven Stelter or Walter McCullough knew that Officer Santiago had or was about to falsely arrest Jimmy Harris or use excessive force against Jimmy Harris.

3. Mark Kapusta, Steven Stelter or Walter McCullough had a realistic opportunity to do something to prevent harm from occurring.

4. Mark Kapusta, Steven Stelter or Walter McCullough failed to take reasonable steps to prevent harm from occurring.

5. Mark Kapusta, Steven Stelter or Walter McCullough's failure to act caused Jimmy Harris to suffer harm.

6. Mark Kapusta, Steven Stelter or Walter McCullough acted under color of law.

If you find that Jimmy Harris has proved each of these things by a preponderance of the evidence, then you must decide for Jimmy Harris and go on to consider the question of damages.

If, on the other hand, you find that Jimmy Harris has failed to prove any one of these things by a preponderance of the evidence, then you must decide for Mark Kapusta, Steven Stelter or Walter McCullough, and you will not consider the question of damages.

Plaintiff's Proposed Jury Instruction No. 34
Source: Adapted from Seventh Circuit Pattern Civil Jury Instruction 7.22
_____ Given
_____ Rejected
_____ Withdrawn
_____ Objected to

**LIABILITY OF SUPERVISOR**

To succeed on his claim against Ed Flynn for failure to supervise, Jimmy Harris must prove each of the following (number of elements) things by a preponderance of the evidence:

1. Officer Santiago impermissibly stopped Jimmy Harris' vehicle, falsely arrested Jimmy Harris, or used excessive force on Jimmy Harris;

2. Ed Flynn knew or should have known that officers that he supervised, while he was the chief of police of the Milwaukee Police Department **did not have a policy with regards vehicle's that did not match DOT records, which resulted in illegal stops of vehicles** and knew that officers would stop vehicles in similar situations;

3. Ed Flynn approved or ~~, assisted,~~ condoned or purposely ignored Officer Santiago's impermissible stop of Plaintiff's vehicle

4. As a result, Jimmy Harris was injured. If you find that Jimmy Harris has proved each of these things by a preponderance of the evidence, then you must decide for Jimmy Harris, and go on to consider the question of damages. If, on the other hand, you find that Jimmy Harris has failed to prove any one of these things by a preponderance of the evidence, then you must decide for Ed Flynn, and you will not consider the question of damages.

Plaintiff's Proposed Jury Instruction No. 34
Source: Adapted from Seventh Circuit Pattern Civil Jury Instruction 7.23
_____ Given
_____ Rejected
_____ Withdrawn
_____ Objected to

## LIABILITY OF MUNICIPALITY

If you find that Jimmy Harris has proved a constitutional violation by a preponderance of the evidence, you must consider whether the City of Milwaukee is also liable to Plaintiff. The City of Milwaukee is not responsible simply because it employed the Defendant police officers.

To succeed on this claim, Jimmy Harris must prove each of the following 3 things by a preponderance of the evidence:

1.     Jimmy Harris was unreasonably detained, falsely arrested or impermissibly stopped by Officer Froilan Santiago.

2.     At the time, the City of Milwaukee **did not have** a policy with respect to police stops of vehicles that did not match Department of Transportation records. The term policy means:

-     A custom of conducting traffic stops of vehicles that allegedly did not match Department of Transportation records that is persistent and widespread, so that it is the City of Milwaukee's standard operating procedure. A persistent and widespread pattern may be a custom even if City of Milwaukee has not formally approved it, so long as Plaintiff proves that a policy-making official knew of the pattern and allowed it to continue.

3. The policy as described in paragraph 2 caused Jimmy Harris' illegal traffic stop and unreasonable detention.

Plaintiff's Proposed Jury Instruction No. 35
Source: Adapted from Seventh Circuit Pattern Civil Jury Instruction 7.24
_____ Given
_____ Rejected
_____ Withdrawn
_____ Objected to

## LIABILITY OF MUNICIPALITY FOR FAILURE TO TRAIN,
## SUPERVISE OR DISCIPLINE

To succeed on his claim against the City of Milwaukee for a policy of failure to train and supervise its officers, Jimmy Harris must prove each of the following 3 things by a preponderance of the evidence:

1. The Milwaukee Police Department's training program was not adequate to train its officers to properly handle recurring situations;

2. Ed Flynn knew that it was highly predictable that impermissible stops of vehicle's whose color did not match Department of Transportation records would occur without more or different training and/or adequate supervision of its officers, because there was a pattern of similar constitutional violations; and

3. The Milwaukee Police Department's failure to provide adequate training and supervision caused the impermissible stop of Jimmy Harris' vehicle based on the color of the vehicle.

If you find that Jimmy Harris has proved each of these things by a preponderance of the evidence, then you must decide for Jimmy Harris, and go on to consider the question of damages.

If, on the other hand, you find that Jimmy Harris has failed to prove any one of these things by a preponderance of the evidence, then you must decide for Defendant City of Milwaukee, and you will not consider the question of damages.

Plaintiff's Proposed Jury Instruction No. 36
Source: Adapted from Seventh Circuit Pattern Civil Jury Instruction 7.25
_____ Given
_____ Rejected
_____ Withdrawn
_____ Objected to

**BATTERY: BODILY HARM**

A battery occurred if:

1. Froilan Santiago intentionally caused bodily harm to Jimmy Harris; and

2. Jimmy Harris did not consent to the harm.

"Bodily harm" means physical pain or injury, illness, or any impairment of physical condition.

The requirement that Froilan Santiago intended to cause bodily harm means that Froilan Santiago had the mental purpose to cause bodily harm to Jimmy Harris or was aware that his or her conduct was practically certain to cause bodily harm to Jimmy Harris.

Plaintiff's Proposed Jury Instruction No. 37
Source: Adapted from State of Wisconsin Civil Jury Instruction 2005
_____ Given
_____ Rejected
_____ Withdrawn
_____ Objected to

Case 2:14-cv-01002-LA   Filed 07/24/19   Page 54 of 61   Document 110

**BATTERY: OFFENSIVE CONTACT**

A battery occurred if:

1. Froilan Santiago intentionally caused offensive contact with Jimmy Harris; and

2. Jimmy Harris did not consent to the contact.

A contact is "offensive" if a reasonable person in Jimmy Harris 's situation would have been offended by the contact. [An offensive contact is one that offends a reasonable sense of personal dignity.]

The requirement that Froilan Santiago intended to cause offensive contact means that Froilan Santiago had the mental purpose to cause offensive contact to Jimmy Harris or was aware that his or her conduct was practically certain to cause offensive contact to Jimmy Harris.

Plaintiff's Proposed Jury Instruction No. 38
Source: Adapted from State of Wisconsin Civil Jury Instruction 2005.5
_____ Given
_____ Rejected
_____ Withdrawn
_____ Objected to

## DAMAGES: COMPENSATORY

If you find in favor of Jimmy Harris on one or more of Jimmy Harris' claims, then you must determine the amount of money that will fairly compensate Jimmy Harris for any injury that you find he sustained and is reasonably certain to sustain in the future as a direct result of physical injuries Jimmy Harris suffered.

Jimmy Harris must prove his damages by a preponderance of the evidence. Your award must be based on evidence and not speculation or guesswork. This does not mean, however, that compensatory damages are restricted to the actual loss of money; they include both the physical and mental aspects of injury, even if they are not easy to measure.

You should consider the following types of compensatory damages, and no others:

a. The physical, mental and emotional pain and suffering, and disability or loss of a normal life that Jimmy Harris has experienced and is reasonably certain to experience in the future. No evidence of the dollar value of physical or mental and emotional pain and suffering or disability or loss of a normal life has been or needs to be introduced. There is no exact standard for setting the damages to be awarded on account of these factors. You are to determine an amount that will fairly compensate the Jimmy Harris for the injury he has sustained.

b. The reasonable value of medical care and supplies that Jimmy Harris reasonably needed and actually received as well as the present value of the care and supplies that he is reasonably certain to need and receive in the future.

c. The wages and earning capacity that Jimmy Harris has lost and the present value of the wages and earning capacity that Jimmy Harris is reasonably certain to lose in the future because of his inability to work.

If you return a verdict for Jimmy Harris, but Jimmy Harris has failed to prove compensatory damages, then you must award nominal damages of $1.00.

Plaintiff's Proposed Jury Instruction No. 39
Source: Adapted from Seventh Circuit Pattern Civil Jury Instruction 7.26
_____ Given
_____ Rejected
_____ Withdrawn
_____ Objected to

**DAMAGES: PUNITIVE**

If you find for Jimmy Harris, you may, but are not required to, assess punitive damages against Defendants. The purposes of punitive damages are to punish a defendant for his or her conduct and to serve as an example or warning to Defendants and others not to engage in similar conduct in the future.

Jimmy Harris must prove by a preponderance of the evidence that punitive damages should be assessed against Defendants. You may assess punitive damages only if you find that any of the Defendants' conduct was malicious or in reckless disregard of Jimmy Harris' rights. Conduct is malicious if it is accompanied by ill will or spite, or is done for the purpose of injuring Jimmy Harris. Conduct is in reckless disregard of Jimmy Harris' rights if, under the circumstances, a Defendant simply did not care about Jimmy Harris' safety or rights.

If you find that punitive damages are appropriate, then you must use sound reason in setting the amount of those damages. Punitive damages, if any, should be in an amount sufficient to fulfill the purposes that I have described to you, but should not reflect bias, prejudice, or sympathy toward any party. In determining the amount of any punitive damages, you should consider the following factors:

- the reprehensibility of any of the Defendants' conduct;

- the impact of any of the Defendants' conduct on Jimmy Harris;

- the relationship between Jimmy Harris and Defendants;

- the likelihood that any Defendant would repeat the conduct if an award of punitive damages is not made;

- the relationship of any award of punitive damages to the amount of actual harm the Jimmy Harris suffered.

Plaintiff's Proposed Jury Instruction No. 40
Source: Adapted from Seventh Circuit Pattern Civil Jury Instruction 7.28
_____ Given
_____ Rejected
_____ Withdrawn
_____ Objected to

## PROPOSED SPECIAL VERDICT FORM

We, the jury, find as follows on the claims of the Plaintiff, Jimmy Harris, against the Defendants Froilan Santiago, Edward Flynn, Mark Kapusta, Steven Stelter, Walter McCullough and City of Milwaukee:

## QUESTION NO. 1: UNLAWFUL DETENTION OR ARREST

Did any of the following Defendants unlawfully detain or arrest Jimmy Harris?

| Answer: | a. Froilan Santiago | _____ YES | _____ NO |
| | b. Mark Kapusta | _____ YES | _____ NO |
| | c. Steven Stelter | _____ YES | _____ NO |
| | d. Walter McCullough | _____ YES | _____ NO |

## QUESTION NO. 2: EXCESSIVE FORCE

Did any of the following Defendants use excessive force in detaining or arresting Jimmy Harris?

| Answer: | a. Froilan Santiago | _____ YES | _____ NO |
| | b. Mark Kapusta | _____ YES | _____ NO |
| | c. Steven Stelter | _____ YES | _____ NO |

## QUESTION NO. 3: ILLEGAL DETENTION

Did any of the following Defendants cause Plaintiff to be detained without probable cause?

| Answer: | a. Froilan Santiago | _____ YES | _____ NO |
| | b. Mark Kapusta | _____ YES | _____ NO |
| | c. Steven Stelter | _____ YES | _____ NO |

d. Walter McCullough     _____ YES     _____ NO

## QUESTION NO. 4: BATTERY

Did Froilan Santiago commit common law battery against Jimmy Harris?

Answer:     _____ YES     _____ NO

## QUESTION NO. 5: SEARCH OF VEHICLE

Was Jimmy Harris' vehicle illegally searched?

Answer:     _____ YES     _____ NO

## QUESTION NO. 6: FAILURE TO INTERVENE

Did any of the following Defendants fail to intervene to prevent another Defendant from violating Plaintiff's constitutional rights, including the arrest and detention of Jimmy Harris and the search of his vehicle?

Answer:     a. Mark Kapusta     _____ YES     _____ NO

               b. Steven Stelter     _____ YES     _____ NO

               c. Walter McCullough     _____ YES     _____ NO

## QUESTION NO. 7: FAILURE TO TRAIN

Did Edward Flynn and the City of Milwaukee fail to properly train the officers of the Milwaukee Police Department?

Answer:     _____ YES     _____ NO

59

## COMPENSATORY DAMAGES

We, the jury, award the Plaintiff, Jimmy Harris, compensatory damages in the

amount of $_____.

## PUNITIVE DAMAGES

We, the jury, award the Plaintiff, Jimmy Harris, punitive damages against Froilan

Santiago in the amount of $_____.

We, the jury, award the Plaintiff, Jimmy Harris, punitive damages against Ed

Flynn in the amount of $_____.

We, the jury, award the Plaintiff, Jimmy Harris, punitive damages against Mark

Kapusta in the amount of $_____.

We, the jury, award the Plaintiff, Jimmy Harris, punitive damages against Steven

Stelter in the amount of $_____.

We, the jury, award the Plaintiff, Jimmy Harris, punitive damages against Walter

McCullough in the amount of $_____.

We, the jury, award the Plaintiff, Jimmy Harris, punitive damages against the City

of Milwaukee in the amount of $_____.

**Please sign and date the form below:**


_____          _____
Presiding Juror


_____          _____


_____          _____


_____          _____

Dated this 24th day of July, 2019.

**CADE LAW GROUP LLC**

By: s/Nathaniel Cade, Jr.
     Nathaniel Cade, Jr.
     P.O. Box 170887
     Milwaukee, WI 53217
     (414) 255-3802 (phone)
     (414) 255-3804 (fax)
     nate@cade-law.com

     Attorneys for Plaintiff, Jimmy Harris