UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
_____

JIMMY HARRIS,

        Plaintiff,

v.                                           Case No. 14-C-1002

CITY OF MILWAUKEE,
OFFICER FROILAN SANTIAGO,
OFFICER MARK KAPUSTA,
OFFICER STEVEN STELTER,
CHIEF OF POLICE EDWARD FLYNN,
SERGEANT WALTER MCCULOUGH,

        Defendants.
_____

## DEFENDANTS' PRETRIAL REPORT

**(1) Short Summary of the Facts of the Case and Theories of Defense**

On November 19, 2010, the defendant, Milwaukee Police Officer Froilan Santiago ("Santiago"), while operating his squad car in the area of St. Mary's Hospital, chose to check on the vehicle registration of an automobile being operated by the plaintiff, Jimmy Harris ("Harris"). After checking the registration, Santiago stopped the vehicle operated by Harris, employing the squad's emergency lights, on North Avenue, at a point on the street west of the hospital.

Santiago perceived that the vehicle color did not match the registration. Upon activating the squad's emergency lights, the squad camera was activated. The video of the vehicle operated by Harris portrays a very dark colored car; the registration indicates that the car was gray.

After a short time, the officer approached the vehicle operated by Harris and the officer is expected to testify that he noted the smell of marijuana coming from inside the Harris vehicle.

Officer Santiago and Harris had a verbal exchange at the vehicle and the officer is expected to testify that he and Harris had an exchange about any discrepancy between the registration and the car color. The officer is expected to testify that he offered to show Harris the registration information showing on his squad computer.

As they walked back towards the squad, Santiago attempted to conduct a brief pat down search of Harris. Harris recently had undergone shoulder surgery, and in the course of the pat down moved his arm up and down and did not keep the arm out. The officer ultimately stopped the search and directed Harris to sit on the nearby street curb. Harris initially was verbally and physically resistant, but ultimately sat on the curb. Harris continued to yell loudly at the officer and the officer is expected to testify that he ultimately decided to handcuff Harris because of what the officer perceived as obstruction of his investigation.

It is expected that Officer Santiago will testify that Harris resisted the handcuffing effort. The physical struggle ended near the side Officer Santiago's vehicle. Backup officers then responded and completed the handcuffing process.

### (2) Statement of the Issues

Did Officer Santiago unlawfully detain Mr. Harris.

Did Officer Santiago employ excessive force against Mr. Harris?

What harm, if any, did the force employed by Officer Santiago cause to Mr. Harris?

Did Officers Santiago, Mark Kapusta ("Kapusta"), Steven Stelter ("Stelter"), and Sergeant Walter McCullough ("McCullough") illegally search the interior area and trunk of the Harris vehicle?

What harm, if any, did the search undertaken by Santiago, Kapusta, Stelter, and McCullough cause to Mr. Harris?

2

Did the defendants city of Milwaukee and Chief Edward Flynn (Chief Morales should be substituted for this defendant, if the Court deems this necessary given the naming of the city as a defendant) fail to train or supervise police officers with respect to traffic stops for automobiles with colors not matching vehicle registration?

What harm, if any, did the municipal policy or custom cause to Mr. Harris?

Did Officer Santiago or Officer Stelter commit an assault under Wisconsin law against Mr. Harris?

What harm, if any, did the assault under Wisconsin law cause to Mr. Harris?

Did Officer Santiago commit a battery under Wisconsin law against Mr. Harris?

What harm, if any, did the battery under Wisconsin law cause to Mr. Harris?

What punitive damages, if any, may Mr. Harris recover from any defendant (compare Amended Complaint [Doc. 41], Prayer for Relief, p. 13 and Wis. Stat. § 893.80(3))?

**(3) Names and Addresses of All Witnesses Expected to Testify**

The defendants may call the following individuals as witnesses on their behalf:

Froilan Santiago

Mark Kapusta

Walter McCullough

Steven Stelter

Eric Ratzmann

Officer Jose Alba

Sergeant Michelle Pagan

Records custodian—Milwaukee Police Department

All of the above-named individuals are present or former Milwaukee police officers of varying ranks whose present or last-known business address is 749 West State Street, Milwaukee, Wisconsin.

Laura Rees

Address reflected in police report previously provided to plaintiff's counsel.

Any witness identified in the Plaintiff Pretrial Report

**(4) Statement of Background of Expert Witnesses**

The defendants have not separately employed individuals to serve as expert witnesses in this lawsuit. In the course of the investigation of Mr. Harris' citizen's complaint to the Milwaukee Police Department, the police department asked two of its officers, Officer Jose Alba and Sergeant Michelle Pagan, to review the squad camera video relating to the incident. Reports on their evaluations of the incident were previously provided to plaintiff's counsel in discovery.

**(5) List of Exhibits to be offered at Trial**

The defendants may rely upon some of the documents identified by the plaintiff as exhibits in the trial of this case, or may introduce them separately if not offered by the plaintiff. In particular, or in addition to these exhibits, the defendants may submit the following as exhibits:

1001  Google map of area of intersections near St. Mary's Hospital

1002  Wheaton Franciscan Healthcare records

1003  Froedtert and Medical College medical records

1004  Report of statement of Laura Rees by Officer Mark Kapusta

1005  Citizen Complaint Form submitted by Jimmy Harris

1006  Recorded statement of Jimmy Harris to Detective Michael Wilkerson

1007  Squad camera recording of traffic stop of Jimmy Harris

4

1008    Report of interview of Officer Jose Alba, Master Instructor Trainer

1009    March 2, 2012 Report of Lieutenant David A. Salazar Jr.

1010    Transcript of deposition of Jimmy Harris in the above-captioned case

1011    Transcript of deposition of Jimmy Harris in *Jimmy Harris v. GM Financial, et al.*

1012    Plaintiff's Response to Defendants First Set of Interrogatories and Requests to Produce

1013    Citation No. 6132912-2, *City of Milwaukee v. Jimmy L. Harris*

1014    Memo book entry relating to interview of Laura Rees

1015    Booking photograph of Jimmy L. Harris

**(6) Designation of All Depositions or Portions of Transcripts or Other Recordings of Depositions to be Read into the Record or Played at Trial as Substantive Evidence**

At this time, the defendants do not anticipate submitting any deposition testimony as substantive evidence in lieu of live witness testimony, but that may change if one or more witnesses are unavailable at the time scheduled for trial. They may also read portions of deposition testimony of various witnesses or parties for the purpose of impeachment or rehabilitation.

**(7) Estimate of Time Needed to Try the Case**

The matter should be tried to completion in four days. The defendants anticipate that counsel for the parties will confer as to certain stipulations in an effort to expedite the trial of this matter.

**(8)(a) Proposed *Voir Dire* Questions:**

The defendants submit the proposed *voir dire* questions which are attached hereto as Attachment A.

**(8)(b) Proposed Jury Instructions on Substantive Issues**

The defendants propose the jury instructions, attached hereto at Attachment B, drawn from the Federal Civil Jury Instructions of the Seventh Circuit, or upon the substantive federal law and, where appropriate, upon the Pattern Civil Jury Instructions of the state of Wisconsin; with

5

respect to the pattern federal instructions, as noted by the Committee on Federal Civil Jury Instructions for the Seventh Circuit, "No trial judge is required to use them, and the Committee, while hopeful that they will provide an effective template in most trials, strongly recommends that each judge review the instructions to be sure each fits the case on trial [and…t]he instructions were drafted with the expectation that certain modifications will be made routinely."

**(8)(c) Proposed Verdict Form**

The defendants submit as the proposed verdict to be provided to the jury at the close of the trial in the above-captioned case the material attached hereto as Attachment C.

Dated at Milwaukee, Wisconsin this 26th day of July, 2019.

GRANT F. LANGLEY
City Attorney


s/JAN A. SMOKOWICZ
Deputy City Attorney
Attorneys for Defendants
jsmoko@Milwaukee.gov

P.O. ADDRESS:

200 East Wells Street, Suite 800
Milwaukee, WI 53202
(414) 286-2601
Fax: (414) 286-8550

1032-2014-2034.001:38057

6

# ATTACHMENT A

**DEFENDANTS' PROPOSED *VOIR DIRE* QUESTIONS**

1.      Have you read anything about this lawsuit or heard anything about it on the radio, television, or on the internet?  If so, would that coverage or commentary influence you in your consideration of the evidence of this case?

2.      Do you have any feelings, whether strongly positive or strongly negative, towards the City of Milwaukee Police Department?  If so, would those feelings influence your consideration of the evidence of this case?

3.      Have you or any members of your family had any police training?  If so, what was the nature and extent of that training?

4.      Are you or members of your family familiar with the location of North Avenue in the City of Milwaukee, in the area of St. Mary's Hospital?

5.      Have you or a member of your immediate family ever made a claim against any law enforcement department?  Please briefly explain.

6.      Have you or any member of your family or close friend had any unpleasant experience or encounter with any police officer?

7.      Is there anything about the nature of this case that may make it difficult for you to sit on the jury?

8.      Have any of the prospective jurors or jurors' family members had any legal training?  If so, what was the nature and extent of the training?

9.      Have you, or any of your family or friends, ever been detained by a law enforcement officer?  If yes, please identify who has been detained and describe the circumstances of the detention.

10.     Are you familiar with any person who has suffered a rotator cuff injury?  If yes, please describe the manner in which that injury occurred.

# ATTACHMENT B

**DEFENDANTS' PROPOSED JURY INSTRUCTIONS**

**1.03 ALL LITIGANTS EQUAL BEFORE THE LAW**

In this case one of the defendants is a municipal corporation. All parties are equal before the law. A municipal corporation is entitled to the same fair consideration that you would give any individual person.

**1.04 EVIDENCE**

The evidence consists of the testimony of the witnesses, the exhibits admitted in evidence, and stipulations

A stipulation is an agreement between both sides that certain facts are true that a person would have given certain testimony.

I have taken judicial notice of certain facts. You must accept those facts as proved.

**1.08 CONSIDERATION OF ALL EVIDENCE REGARDLESS OF WHO PRODUCED**

In determining whether any fact has been proved, you should consider all of the

evidence bearing on the question regardless of who introduced it.

**1.09 LIMITED PURPOSE OF EVIDENCE**

You will recall that during the course of this trial I instructed you that I admitted certain evidence for a limited purpose. You must consider this evidence only for the limited purpose for which it was admitted.

**1.10 EVIDENCE LIMITED TO CERTAIN PARTIES**

Each party is entitled to have the case decided solely on the evidence that applies to that party. You must consider the evidence concerning each named defendant only in the case against that named defendant. You must not consider it against any other party.

**1.17 NUMBER OF WITNESSES**

You may find the testimony of one witness or a few witnesses more persuasive than the testimony of a larger number. You need not accept the testimony of the larger number of witnesses.

## 1.21 EXPERT WITNESSES

You have heard [a witness] [witnesses] give opinions about matters requiring special knowledge or skill. You should judge this testimony in the same way that you judge the testimony of any other witness. The fact that such person has given an opinion does not mean that you are required to accept it. Give the testimony whatever weight you think it deserves, considering the reasons given for the opinion, the witness's qualifications, and all of the other evidence in the case.

## 1.25 MULTIPLE CLAIMS; MULTIPLE PLAINTIFFS/DEFENDANTS

You must give separate consideration to each claim and each party in this case. Although there are five defendants, it does not follow that if one is liable, any of the others is also liable.

In considering a claim against a defendant, you must not consider evidence admitted only against other defendants or only as to other claims.

## 1.31 NO NEED TO CONSIDER DAMAGES INSTRUCTION

If you decide for the defendants on the question of liability, then you should not

consider the question of damages.

## 2.06. JUDICIAL NOTICE

I have decided to accept as proved the fact____. You must now treat this fact as having been proved for the purpose of this case.

## 7.02 GENERAL: REQUIREMENT OF PERSONAL INVOLVEMENT

Plaintiff must prove by a preponderance of the evidence that Froilan Santiago, Mark Kapusta, Steven Stelter, and Walter McCullough were personally involved in the conduct that Plaintiff

complains about. You may not hold any one of these individuals liable for what other employees did or did not do.

## 7.04 LIMITING INSTRUCTION CONCERNING EVIDENCE OF STATUTES, ADMINISTRATIVE RULES, REGULATIONS, AND POLICIES

You have heard evidence about whether Defendant's conduct complied with or violated a locally imposed procedure or regulation.

You may consider this evidence in your deliberations as to the use-of-force claim. But remember that the issue is whether Defendant used excessive force on Plaintiff, not whether a /rule, procedure, or regulation might have been violated.

## 7.06 FOURTH AMENDMENT:
## TERRY (INVESTIGATORY) STOP

Plaintiff claims that Defendant Froilan Santiago seized him without reasonable suspicion. To succeed on this claim, Plaintiff must prove each of the following two elements by a preponderance of the evidence:

1. Defendant seized Plaintiff. A person is seized if his movement is restrained by the use of physical force or by a show of authority that the person obeys. A show of authority occurs when a reasonable person would understand that he is not free to end the encounter.

2. Defendant did not have a reasonable suspicion that Plaintiff had committed; was committing; was about to commit a crime. Reasonable suspicion must be based on specific facts known to the officer, together with the reasonable inferences from those facts.

A hunch does not constitute reasonable suspicion.

You may have heard the phrase, "probable cause." Probable cause is not required for the type of seizure you are considering. You should consider only whether there was reasonable suspicion for the seizure as I have defined it in this instruction.

If you find that Plaintiff has proved each of these things by a preponderance of the evidence, then you must decide for Plaintiff, and go on to consider the other questions on the verdict.

If, on the other hand, you find that Plaintiff has failed to prove any one of these things by a preponderance of the evidence, then you must decide for Defendant.

## 7.07 FOURTH AMENDMENT:
## FALSE ARREST – ELEMENTS

Plaintiff claims that Defendant Froilan Santiago falsely arrested him. To succeed on this claim, Plaintiff must prove each of the following two things by a preponderance of the

evidence:

1. Defendant arrested Plaintiff.

2. Defendant did not have probable cause to arrest Plaintiff.

If you find that Plaintiff has proved each of these things by a preponderance of the evidence, then you must decide for Plaintiff, and go on to consider the other questions on the verdict.

If, on the other hand, you find that Plaintiff has failed to prove any one of these things by a preponderance of the evidence, then you must decide for Defendant.

## 7.08 FOURTH AMENDMENT:
## FALSE ARREST - DEFINITION OF "PROBABLE CAUSE"

Probable cause exists for an arrest exists if, at the moment the arrest was made, a

reasonable person in the position of Defendant Froilan Santiago would have believed that Plaintiff had committed or was committing a crime. In making this decision, you should consider what Defendant Froilan Santiago knew and the reasonably trustworthy information Defendant had received.

Probable cause requires more than just a suspicion. But it does not need to be based on evidence that would be sufficient to support a conviction, or even a showing that Defendant's belief was probably right.

It is not necessary that Defendant Froilan Santiago had probable cause to arrest Plaintiff for resisting or obstructing an officer, so long as Defendant had probable cause to arrest him for some criminal offense.

### 9.12 Particular Rights—Fourth Amendment—Unreasonable Search—Generally

As previously explained, the plaintiff has the burden of proving that the act of the defendants deprived the plaintiff of particular rights under the United States Constitution. In this case, the plaintiff alleges the defendants Froilan Santiago, Mark Kapusta, Steven Stelter, and Walter McCullough deprived him of his rights under the Fourth Amendment to the Constitution when these Defendants searched the back seat and trunk of Plaintiff's vehicle.

Under the Fourth Amendment, a person has the right to be free from an unreasonable search of his vehicle. In order to prove these Defendants deprived the Plaintiff of this Fourth Amendment right, the Plaintiff must prove the following additional elements by a preponderance of the evidence:

1. Froilan Santiago, Mark Kapusta, Steven Stelter, and Walter McCullough searched the plaintiff's vehicle;

2. in conducting the search, Froilan Santiago, Mark Kapusta, Steven Stelter, and Walter McCullough acted intentionally; and

3. the search was unreasonable.

A person acts "intentionally" when the person acts with a conscious objective to engage in particular conduct. Therefore, the plaintiff must prove these Defendants intended to search the

plaintiff's vehicle. It is not enough if the plaintiff only proves these Defendants acted negligently, accidentally or inadvertently in conducting the search. However, the plaintiff does not need to prove these Defendants intended to violate the plaintiff's Fourth Amendment rights.

In determining whether the search was unreasonable, consider all of the circumstances, including:

(a) the scope of the particular intrusion;

(b) the manner in which it was conducted;

(c) the justification for initiating it; and

(d) the place in which it was conducted.

**Source:** *Model Civ. Jury Instr.* **9th Cir. 9.12 (2019)**

### 9.14 Particular Rights—Fourth Amendment—Unreasonable Search—Exception to Warrant Requirement—Search of Vehicle Incident to Arrest of a Recent Occupant

In general, a search of a person's vehicle is unreasonable under the Fourth Amendment if the search is not authorized by a search warrant. A "search warrant" is a written order signed by a judge that permits a law enforcement officer to search a particular person, place, or thing. Under an exception to this rule, a search warrant is not required and a search is reasonable if the search of the vehicle is incident to a lawful arrest.

I have instructed you previously as to the elements to show probable cause to arrest for a particular crime.

A search of a vehicle back seat and trunk area is "incident to" the arrest of a recent occupant of the vehicle only if:

1. The person is arrested but is not securely in police custody and the specify area searched is "within the reaching distance" of the person arrested; or

2. It is reasonable to believe the vehicle contains evidence of the offense that is the subject of the arrest.

In order to prove the search in this case was unreasonable, the plaintiff must prove by a preponderance of the evidence that this exception to the warrant requirement does not apply— that is, that the search of the vehicle was not incident to a lawful arrest.

**Source:** *Model Civ. Jury Instr.* **9th Cir. 9.14 (2019)**

### 7.09 FOURTH AMENDMENT AND FOURTEENTH AMENDMENT : EXCESSIVE FORCE AGAINST ARRESTEE OR DETAINEE- ELEMENTS

Plaintiff claims that Defendant Froilan Santiago used excessive force against him. To succeed on this claim, Plaintiff must prove the following thing by a  preponderance of the evidence:

1. Defendant used unreasonable force against Plaintiff.

If you find that Plaintiff has proved this by a preponderance of the evidence, then you must decide for Plaintiff, and go on to consider the other questions on the verdict.

If on the other hand, you find that Plaintiff did not prove any one of these things by a preponderance of the evidence, then you must decide for Defendant.

### 7.10 FOURTH AMENDMENT: EXCESSIVE FORCE AGAINST ARRESTEE DEFINITION OF "UNREASONABLE"

In performing his job, an officer can use force that is reasonably necessary under the circumstances.

In deciding whether Defendant Froilan Santiago used unreasonable force, you should consider all of the circumstances. Circumstances you may consider include the need for the use of force, the relationship between the need for the use of force and the amount of force used, the extent of the plaintiff's injury, any efforts made by the defendant to temper or limit the amount of force, the severity of the crime at issue, the threat reasonably perceived by the officer, and whether the

plaintiff was actively resisting arrest or was attempting to evade arrest by fleeing, but you are not limited to these circumstances.

You must decide whether Defendant Froilan Santiago's use of force was unreasonable from the perspective of a reasonable officer facing the same circumstances that Defendant faced. You must make this decision based on what the officer knew at the time of the use of force, not based on matters learned after the use of force. In deciding whether Defendant's use of force was unreasonable, you must not consider whether Defendant's intentions were good or bad.

## 7.24 LIABILITY OF MUNICIPALITY

If you find that Plaintiff has proved a constitutional violation by a preponderance of the evidence, you must consider whether the city of Milwaukee is also liable to Plaintiff. The city of Milwaukee is not responsible simply because it employed the defendant police officers.

## 7.25 LIABILITY OF MUNICIPALITY
## FOR FAILURE TO TRAIN

To succeed on his claim against the city of Milwaukee for a policy of failure to train its officers, Plaintiff must prove each of the following three things by a preponderance of the evidence:

1. The city of Milwaukee's training program was not adequate to train its officers to properly handle recurring situations;

2. The chief of police knew that it was highly predictable that unlawful traffic stops would occur without different training of its officers, because it was highly predictable even without a pattern of similar constitutional violations; and

3. The city of Milwaukee 's failure to provide adequate training caused the Plaintiff's unlawful seizure.

If you find that Plaintiff has proved each of these things by a preponderance of the evidence, then you must decide for Plaintiff, and go on to consider the question of damages.

If, on the other hand, you find that Plaintiff has failed to prove any one of these things by a preponderance of the evidence, then you must decide for Defendant.

## 7.26 DAMAGES: COMPENSATORY

If you find in favor of Plaintiff, then you must determine the amount of money that will fairly compensate Plaintiff for any injury that you find he sustained as a direct result of the unlawful actions to deny plaintiff the right to a fair trial.  These are called "compensatory\damages".

Plaintiff must prove his damages by a preponderance of the evidence. Your award must be based on evidence and not speculation or guesswork. This does not mean, however, that compensatory damages are restricted to the actual loss of money; they include both the physical and mental aspects of injury, even if they are not easy to measure.

You should consider the following types of compensatory damages, and no others:

The physical pain and suffering that Plaintiff has experienced.  No evidence of the dollar value of physical pain and suffering has been or needs to be introduced. There is no exact standard for setting the damages to be awarded on account of pain and suffering. You are to determine an amount that will fairly compensate the Plaintiff for the injury he has sustained.

The reasonable value of medical care and supplies that Plaintiff reasonably needed and actually received as well as the present value of the care and supplies that he is reasonably certain to need and receive in the future.

If you find in favor of Plaintiff but find that the plaintiff has failed to prove compensatory damages, you must return a verdict for Plaintiff in the amount of one dollar ($1.00).

## WIS JI-CIVIL 2004 ASSAULT

An assault occurred if:

1.  Froilan Santiago and Steven Stelter intended to cause physical harm to plaintiff; and

2. Froilan Santiago and Steven Stelter acted to cause plaintiff to reasonably believe these defendants had the present intent and ability to harm plaintiff.

The requirement that these defendants intended to cause bodily harm means that these defendants had the mental purpose to cause bodily harm to plaintiff or were aware that his or her conduct was practically certain to cause bodily harm to the plaintiff.

**WIS JI-CIVIL 2005 BATTERY: BODILY HARM**

A battery occurred if:

1. Froilan Santiago intentionally caused bodily harm to plaintiff; and

2. Plaintiff did not consent to the harm.

"Bodily harm" means physical pain or injury, illness, or any impairment of physical condition.

The requirement that Froilan Santiago intended to cause bodily harm means that he had the mental purpose to cause bodily harm to the plaintiff or was aware that his or her conduct was practically certain to cause bodily harm to the plaintiff.

# ATTACHMENT C

**DEFENDANTS' PROPOSED SPECIAL VERDICT**

**QUESTION NO. 1:**

Did Froilan Santiago unlawfully seize Jimmy Harris?

Answer: _____ Yes _____ No

**QUESTION NO. 2:**

Did Froilan Santiago use excessive force against Jimmy Harris?

Answer: _____ Yes _____ No

If you answered "no" to Question No. 2, then you need not answer this question. However, if you have answered "yes" to Question No. 2, then answer this question:

**QUESTION NO. 3:**

Did the force used by Froilan Santiago cause any injuries to Jimmy Harris?

Answer: _____ Yes _____ No

**QUESTION NO. 4:**

Did any of the following defendants illegally search the motor vehicle of Jimmy Harris?

a. Froilan Santiago

Answer: _____ Yes _____ No

b. Mark Kapusta

Answer: _____ Yes _____ No

c. Steven Stelter

Answer: _____ Yes _____ No

d. Walter McCullough

Answer: _____ Yes _____ No

If you answered "no" to all parts of Questions Nos. 1, 3, and 4, then you need not answer this question.  However, if you have answered "yes" to any part of Questions Nos. 1,3, or 4, then answer this question:

**QUESTION NO. 5:**

Did the City of Milwaukee have an unconstitutional policy of failing to train its officers?

Answer: _____ Yes  _____ No

If you answered "no" to Question No. 5, then you need not answer this question. However, if you have answered "yes" to Question No. 5, then answer this question:

**QUESTION NO. 6:**

Was the City of Milwaukee's policy, practice or custom a cause of the injuries suffered by the plaintiff?

Answer: _____ Yes  _____ No

**QUESTION NO. 7:**

Did any of the following defendants unlawfully assault Jimmy Harris?

a.    Froilan Santiago

   Answer: _____ Yes  _____ No

b.    Steven Stelter

   Answer: _____ Yes  _____ No

**QUESTION NO. 8:**

Did Froilan Santiago commit a battery upon Jimmy Harris?

   Answer: _____ Yes  _____ No

If you answered "no" to all parts of Questions Nos. 1, 2, 3, 4, 7 and 8, then you need not answer this question. However, if you have answered "yes" to any part of Questions Nos. 1, 2, 3, 4, 7, or 8, then answer this question:

**QUESTION NO. 6:**

What amount of money, if any, will compensate the plaintiff for any damages he sustained?

$_____

_____
FOREPERSON

1032-2014-2034.001:338057